## SISTARE v. SISTARE.

ERROR TO THE SUPREME COURT OF ERRORS OF THE STATE
OF CONNECTICUT.

No. 7. Argued November 1, 1909.—Decided May 31, 1910.

Past due installments of a judgment for future alimony rendered in
one State are within the protection of the full faith and credit clause
of the Federal Constitution unless the right to receive the alimony
is so discretionary with the court rendering the decree that, even
in the absence of application to modify the decree, no vested right
exists.

Unless a decision of this court in terms overrules a former decision, it
will, if possible, be so construed as to harmonize with, and not over-
rule such prior decision; and so *held* that *Barber* v. *Barber*, 21 How.
582, establishing the general rule that a judgment for alimony as
to past installments was within the full faith and credit clause was
not overruled by *Lynde* v. *Lynde*, 181 U. S. 187, but the latter case
established the exception as to such judgments where the alimony
is so discretionary with the court that a vested right to receive the
same does not exist.

The settled doctrine in New York in 1899 was that no power existed
to modify a judgment for alimony absolute in terms unless conferred
by statute, and a judgment for future alimony entered in 1899 under
§§ 1762–1773, Code of Civil Procedure, is absolute until modified by
the court rendering it; such a judgment, therefore, as to past due

installments, falls under the general rule that it is entitled to full faith
and credit in the courts of another State. *Barber* v. *Barber*, 21 How.
582, followed; *Lynde* v. *Lynde*, 181 U. S. 187, distinguished.
Although the full faith and credit clause may not extend to mere modes
of procedure, a judgment absolute in terms and enforcible in the State
where rendered must, under the full faith and credit clause of the
Federal Constitution, be enforced by the courts of another State,
even though the modes of procedure to enforce its collection may not
be the same in both States.
80 Connecticut, 1, reversed.

THE facts which involve the extent to which, under
the full faith and credit clause of the Constitution of the
United States, effect must be given, in the courts of an-
other s ate, to a judgment for alimony, on which arrears
are due, are stated in the opinion.

*Mr. Robert Goeller* and *Mr. Benjamin Slade*, for plaintiff
in error:

The judgment rendered by the New York court related
to a court proceeding, and from the language employed
in the decree it is clear that the plaintiff is forever sepa-
rated from the defendant, and that the defendant's obli-
gation to contribute to the support of the plaintiff and the
maintenance and education of the plaintiff's and defend-
ant's child to the extent indicated by the decree com-
menced with the date of the entry of the final decree of
separation.

The decree finds its support under §§ 1769–1771 of the
New York Code of Civil Procedure. *Barber* v. *Barber*, 21
How. 582, is decisive of this case upon that proposition.
It held that a judgment of alimony becomes a judicial
debt of record against the husband, which may be en-
forced by execution or attachment against his person,
issuing from the court which gave the decree. Alimony
decreed to a wife in a divorce of separation from bed
and board, is as much a debt of record, until the decree
has been recalled, as any other judgment for money is.

*Howard* v. *Howard*, 15 Massachusetts, 196; *Clark* v. *Clark*, 6 Watts & Serg. 85; *Wheeler* v. *Wheeler*, 2 Dana, 310; *Knapp* v. *Knapp*, 59 Fed. Rep. 641; *Trowbridge* v. *Spinning*, 54 L. R. A. 204; *Arrington* v. *Arrington*, 127 N. Car. 190.

The court below based its conclusions on *Lynde* v. *Lynde*, 181 U. S. 187, and undertakes to distinguish that case from *Barber* v. *Barber, supra,* but the opinion in *Lynde* v. *Lynde,* 162 N. Y. 412, shows that the want of jurisdiction was considered a vital point on the question of sustaining the validity of the decree affecting future payments.

The distinction that exists between the *Lynde case* and the *Barber case* is that in the former case so much of the decree providing for the future payment of alimony was invalid as against the defendant for want of jurisdiction; but in the *Barber case* the decree having been rendered with jurisdiction over the defendant, such decree was sustained in its entirety.

If that distinction is well founded, both opinions are in accord; if no such distinction exists, the decision in the *Lynde case* seems inconsistent with the doctrine laid down in the *Barber case.*

The learned court of Connecticut erred in its construction of § 1771, N. Y. Code of Civ. Pro., in holding that under that section the trial court has power to annul, vary or modify its decree affecting the question of alimony.

Unless new facts occur, there can be no alteration of such decree even affecting the care, custody and maintenance of children. The court's power to modify a decree in respect to alimony does not destroy its finality. *Dow* v. *Blake*, 148 Illinois, 76.

Any modification made by the court that rendered the decree before the present suit was instituted could be pleaded by way of defense, but in the absence of a modification, the courts of other States should be required to

give to that decree the same binding force and effect that it has in the State where rendered. *Barber* v. *Barber, supra; Kunze* v. *Kunze,* 94 Wisconsin, 54; *Trowbridge* v. *Spinning,* 54 L. R. A. 204; *Dobson* v. *Pierce,* 12 N. Y. 156; *Fletcher* v. *Farrel,* 9 Dana, 372; *Cheever* v. *Wilson,* 9 Wall. 108; *Shield* v. *Thomas,* 18 How. 353; *Younge* v. *Carter,* 10 Hun, 194; *Harris* v. *Balk,* 198 U. S. 214.

Under the construction given by the court below to these statutes, no distinction can be made between the sum decreed as payable at once, and any sum decreed payable in the future. The statutes in question contain no language differentiating between the sums adjudged at the rendition of the decree and the sums adjudged to become payable in the future. Yet a part of the decree in the *Lynde* v. *Lynde case* was enforced. The decree in question, until reversed, annulled or modified, is a valid, subsisting obligation on the part of the defendant and is definite in its character. *Knapp* v. *Knapp,* 59 Fed. Rep. 641. See also *McCracken* v. *Swartz,* 5 Oregon, 63; *Dubois* v. *Dubois,* 6 Cowen, 494; *Allen* v. *Allen,* 100 Massachusetts, 374; *Horsford* v. *Van Ankes,* 79 Indiana, 302; *Brislowe* v. *Dobson,* 50 Mo. App. 176.

An action of debt will lie on a judgment as soon as it is recovered. In the majority of the States of this Union the owner of a judgment may bring suit thereon in the same court that rendered it or in any other court of competent jurisdiction, and prosecute it to final judgment, notwithstanding the collection of the original judgment may still have been enforced by execution in the State of its rendition. Freeman on Judgments, § 432; *Mills* v. *Duryea,* 7 Cr. 481; *Blake* v. *People,* 80 Illinois, 14; *Coughlin* v. *Ehlert,* 39 Missouri, 287; *Bullock* v. *Bullock,* 57 N. J. L. 508; *Bennett* v. *Bennett,* 3 Fed. Cas. 1318.

The defendant in error is precluded from attacking the dignity and effect of the judgment in question until it has been actually reversed or set aside.

The court below erred in holding that the courts of Connecticut by rendering a money judgment in the case at bar would be giving greater effect to the decree in question than such decree has in the State of New York. A decree of divorce, valid and effectual by the law of the State in which it is obtained, is valid and effectual in all other States. *Cheever* v. *Wilson*, 9 Wall. 108.

In all cases a judgment of one State does not carry the efficacy of a judgment in another State capable of enforcement by execution until such judgment is reduced to a new judgment in the place where it is sought to enforce it. After obtaining a judgment in the place of enforcement it can only be executed in the latter State as its laws may permit. *Buchanan County Bank* v. *Hull County*, 74 Fed. Rep. 373; *Lamberton* v. *Grant*, 94 Maine, 508; *Carter* v. *Bennett*, 6 Florida, 214; *Thompson* v. *Wattman*, 18 Wall. 457, 463; *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265, 292; *Banlock* v. *Banlock*, 51 N. J. Eq. 444.

A judgment recovered in one State is not executory in any other State in the sense that final process for its enforcement can issue on merely filing or docketing the judgment, as in the case of a domestic judgment. *Carter* v. *Bennett*, 6 Florida, 214; *Leathe* v. *Thomas*, 109 Ill. App. 434; *Dunham* v. *Dunham*, 57 Ill. App. 475; *Joice* v. *Scales*, 18 Georgia, 725.

The constitutional provision for giving "full faith and credit" to such judgments relates only to their effect as evidence or a bar to further litigation. *Claflin* v. *Mc-Dermot*, 12 Fed. Rep. 375; *Chicago &c. R. Co.* v. *Wiggins Ferry Co.*, 108 U. S. 18.

In an action on a foreign judgment awarding alimony to the plaintiff, no other relief can be had than a recovery for past due alimony. *Wood* v. *Wood*, 28 N. Y. Supp. 154.

A bill in equity by a woman against her former husband to enforce a provision of a foreign decree of divorce awarding her a definite and ascertained sum as alimony, is de-

murrable on the ground that she has an adequate remedy at law by an action of debt on the decree. *Davis* v. *Davis*, 39 L. R. A. 403.

The only remedy the plaintiff seeks is to obtain the money claimed to be due under the decree. The plaintiff under the decree in question acquired a vested property right of which she could not be deprived without due process of law.

The allowance in the decree of alimony created a judicial debt of record and formed a proper foundation for the recovery of said debt in the present action. *Wetmore* v. *Wetmore*, 149 N. Y. 520; *France* v. *France*, 79 App. Div. (N. Y.) 291; *Barber* v. *Barber, supra.*

The decree in question ought to be enforced as any other judgment out of any property of the husband wherever found. *Broslough* v. *Broslough*, 68 Pa. St. 495; *Brislowe* v. *Dobson, supra; Barber* v. *Barber, supra.*

*Mr. William J. Brennan* for defendant in error:

The statutes of New York show that the order requiring the payment of $22.50 per week was temporary in its nature and enforceable only in the manner provided in such statutes. See §§ 1766–1773, N. Y. Code of Civ. Pro.

It is apparent from these statutes that the judgment in question here was rendered in a proceeding entirely foreign to the statutes or practice of Connecticut. The order with respect to the weekly payments was subject to modification or annulment by the court which granted it at any time, and was enforceable in the peculiar method prescribed by the statute.

The New York courts hold that an order of this character is subject to modification at any time by the court which granted it independent of statute, and is enforceable only in the method provided by the statute. *Tonjes* v. *Tonjes*, 14 Hun (N. Y.), 542. The order in question is not only subject to modification at any time, but, under

the New York decisions, can only be enforced by the sequestration and contempt proceedings provided in the statutes. *Weber* v. *Weber*, 93 Hun (N. Y.), 149; *Branth* v. *Branth,* 20 Civ. Pro. (N. Y.) 33.

The judgment sought to be enforced in this action is an order which is subject to modification at any time by the court which granted it, and it can be enforced in New York only in the method provided by the statutes of that State.

The courts of one State will not enforce the judgments of the courts of another State which are subject to modification and are not final judgments for fixed sums of money. *Lynde* v. *Lynde*, 162 N. Y. 405; *S. C.,* 181 U. S. 183. In the *Lynde case* the Court of Appeals distinguished *Barber* v. *Barber*, 21 How. (U. S.) 582; and see also *Audubon* v. *Shufeldt,* 181 U. S. 577; *Wetmore* v. *Wetmore,* 196 U. S. 68. As to *Arrington* v. *Arrington,* 127 N. Car. 190, see 131 N. Car. 143, where the court admitted that its earlier decision was wrong.

The courts of one State will not enforce the judgments of courts of another State which are subject to modification. The more clearly will they not enforce such orders by judgment and execution where the courts of the State where the judgment was obtained, decline to enforce them in any such way.

MR. JUSTICE WHITE delivered the opinion of the court.

In 1899, by a judgment of the Supreme Court of the State of New York the plaintiff in error was granted a separation from bed and board from her husband, the defendant in error, and he was ordered to pay her weekly the sum of $22.50 for the support of herself and the maintenance and education of a minor child. The judgment, omitting title, is copied in the margin.[1]

---

[1] This action having been begun by the service of the summons herein

In July, 1904, at which time none of the installments of alimony had been paid, the wife commenced this action in the Superior Court of New London County, Connecticut, to recover the amount then in arrears of the decreed alimony. The cause was put at issue and was heard by the court. As stated by the trial judge, in a "Finding" by him made: "The defendant made the following claims of law as to the judgment to be rendered in this action:

on the defendant personally, . . . now on motion of . . . attorneys for the plaintiff, it is

Ordered, adjudged and decreed that the plaintiff be, and she hereby is, forever separated from the defendant, and from the bed and board of said defendant, on the ground of non-support and cruel and inhuman treatment by the defendant. And it is

Further ordered, adjudged and decreed that from and after the entry of this decree the defendant Horace Randall Sistare pay to the plaintiff Matilda Von Ellert Sistare, for her maintenance and support and the maintenance and education of Horace Von Ellert Sistare, the minor child of the plaintiff and defendant, the sum of twenty-two and 50–100. dollars ($22.50) per week, such sum to be paid into the hands of her attorneys of record in this action on each and every Monday. And it is further

Ordered, adjudged and decreed that the sole care, custody, control and education of said minor child Horace Von Ellert Sistare is hereby awarded to the plaintiff, and the defendant, upon complying fully with each and all of the directions of the decree herein, and not otherwise, and during his good behavior, shall, until the further order of. this court, be permitted to see said child for the space of two hours, between the hours of ten and twelve o'clock in the forenoon on Wednesdays and Saturdays, excepting Wednesdays and Saturdays during the months of July, August and September of each year. And it is further

Ordered, adjudged and decreed that costs are hereby awarded to the plaintiff against the defendant, taxed at the sum of one hundred and seventeen and 67–100 dollars ($117.67), and that the plaintiff do recover said costs from the defendant and have execution therefor. And it is further

Ordered, adjudged and decreed that the plaintiff have leave to apply from time to time for such orders at the foot of this judgment as may be necessary for its enforcement and for the protection and enforcement of her rights in the premises.

"(*a*) That the judgment rendered by the Supreme Court of the State of New York in requiring the future payment of $22.50 per week did not constitute a final judgment for a fixed sum of money which is enforcible and collectible in this action.

"(*b*) That said judgment being subject to modification by the court which granted it, is not a judgment which the courts of this State will enforce.

"(*c*) That the requirement that said sums of money should be paid as aforesaid does not constitute a debt or obligation from the defendant to the plaintiff which can be enforced in this action.

"(*d*) That said judgment requiring the said weekly payments cannot be enforced in any other way than according to the procedure prescribed in the statutes of the State of New York, and cannot be enforced in this action.

"(*e*) That the judgment which is sought to be enforced in this action is not a final judgment entitled to full faith and credit in this State by virtue of the provisions of the Constitution of the United States.

"(*f*) That the judgment which is sought to be enforced in this action will not be enforced by the courts of this State through comity.

"(*g*) That the facts will not support a judgment for the plaintiff."

The court, however, adjudged in favor of the plaintiff and awarded her the sum of $5,805, the arrears of alimony at the commencement of the action.

On appeal, the Supreme Court of Errors (80 Connecticut, 1) reversed the judgment and remanded the cause "for the rendition of judgment in favor of the defendant;" and such a judgment, the record discloses, was subsequently entered by the trial court. This writ of error was prosecuted.

The Supreme Court of Errors of Connecticut reached the conclusion that the power conferred upon a New York

court to modify a decree for alimony by it rendered extended to overdue and unsatisfied installments as well as to those to accrue in the future, that hence decrees for future alimony, even as to installments after they had become past due, did not constitute debts of record, and were not subject to be collected by execution, but could only be enforced by the special remedies provided in the law, and were not susceptible of being made the basis of judgments in the State of New York in another court than the one in which the decree for alimony had been made. Guided by the interpretation thus given to the New York law and the character of the decree for future alimony which was based thereon, it was decided that the New York judgment for alimony which was sought to be enforced, even although the installments sued for were all past due, was not a final judgment which it was the duty of the courts of Connecticut to enforce in and by virtue of the full faith and credit clause of the Constitution of the United States. While the ruling of the court was, of course, primarily based upon the interpretation of the New York law, the ultimate ruling as to the inapplicability of the full faith and credit clause of the Constitution was expressly rested upon the decision of this court in *Lynde* v. *Lynde*, 181 U. S. 187.

To sustain her contention that the action of the court below was in conflict with the duty imposed upon it by the full faith and credit clause, the plaintiff in error, by her assignments, in effect challenges the correctness of all the propositions upon which the court below rested its action, and virtually the defendant in error takes issue in argument as to these contentions. In disposing of the controversy, however, we shall not follow the sequence of the various assignments of error or consider all the forms of statement in which the contentions of the parties are pressed in argument, but come at once to two fundamental questions which, being determined, will dispose of all the

issues in the case.   Those inquiries are: 1st. Where a court of one State has decreed the future payment of alimony, and when an installment or installments of the alimony so decreed have become due and payable and are unpaid, is such a judgment as to accrued and past due alimony ordinarily embraced within the scope of the full faith and credit clause of the Constitution of the United States so as to impose the constitutional duty upon the court of another State to give effect to such judgment? 2d. If, as a general rule, the full faith and credit clause does apply to such judgments, is the particular judgment under review exceptionally taken out of that rule by virtue of the nature and character of the judgment as determined by the law of the State of New York, in and by virtue of which it was rendered?   We shall separately consider the questions.

First. *The application as a general rule of the full faith and credit clause to judgments for alimony as to past due installments.*

An extended analysis of the principles involved in the solution of this proposition is not called for, since substantially the contentions of the parties are based upon their divergent conceptions of two prior decisions of this court, (*Barber* v. *Barber*, 21 How. 582, and *Lynde* v. *Lynde*, 181 U. S. 183, 187), and an analysis of those cases will therefore suffice.   For the plaintiff in error it is insisted that the case of *Barber* v. *Barber* conclusively determines that past due installments of a judgment for future alimony rendered in one State are within the protection of the full faith and credit clause, while the defendant in error urges that the contrary is established by the ruling in *Lynde* v. *Lynde*, and that if the *Barber case* has the meaning attributed to it by the plaintiff in error, that case must be considered as having been overruled by *Lynde* v. *Lynde*.

Substantially the controversy in *Barber* v. *Barber* was

this: In the year 1847 the Court of Chancery of New York granted Huldah B. Barber a separation from Hiram Barber and directed the payment of alimony in quarterly installments. Although the separation was decreed to be forever, the power to modify was reserved by a provision that the parties might at any time thereafter, by their joint petition, apply to the court to have the decree modified or discharged. It was provided that unpaid installments of alimony should bear interest, "and that execution might issue therefor *toties quoties.*" The husband failed to pay any of the alimony, and removed to Wisconsin, where he procured an absolute divorce. Subsequently an action was brought by Mrs. Barber upon the common law side of the District Court of the United States in the Territory of Wisconsin to recover the arrears of alimony, but relief was denied "for the reason that the remedy for the recovery of alimony was in a court of chancery, and not at law." A suit in equity to recover the overdue alimony was then commenced by Mrs. Barber, Wisconsin having been admitted into the Union, in the District Court of the United States for the District of Wisconsin. Among other things it was urged in a demurrer by the respondent, as a reason why the relief should be denied, "that the relief sought could only be had in the court of chancery for the State of New York, and that it did not appear that the complainants had exhausted the remedy which they had in New York." The proceedings culminated in a decree in favor of the complainant for the amount of alimony in arrears at the commencement of the suit, and the case was then brought to this court and the questions arising were disposed of in a careful and elaborate opinion. The decree was affirmed. In the course of the opinion it was declared, among other things, that courts of equity possessed jurisdiction to interfere to prevent the decree of the court of another State from being defeated by fraud, and reference was made to English decisions

asserting the power of chancery to compel the payment of overdue alimony. Considering the nature and character of a decree of separation and for alimony and the operation and effect upon such a decree as to past due installments of the full faith and credit clause, it was said (p. 591):

"The parties to a cause for a divorce and for alimony are as much bound by a decree for both, which has been given by one of our state courts having jurisdiction of the subject-matter and over the parties, as the same parties would be if the decree had been given in the ecclesiastical court of England. The decree in both is a judgment of record, and will be received as such by other courts. And such a judgment or decree, rendered in any State of the United States, the court having jurisdiction, will be carried into judgment in any other State, to have there the same binding force that it has in the State in which it was originally given."

And, again, determining the effect of a decree for future alimony, the court expressly declared (p. 9): "Alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is." And it is, we think, clear from the context of the opinion that the court held that the decree in favor of Mrs. Barber operated to cause an indebtedness to arise in her favor as each installment of alimony fell due and that a power to modify, if exerted, could only operate prospectively.

The facts in *Lynde* v. *Lynde* which are pertinent to this controversy are these: A decree of the Court of Chancery of New Jersey in favor of Mrs. Lynde was rendered in 1897 for the sum of $7,840 as alimony due at the date of the decree, with $1,000 for counsel fees, and payment was directed to be made of $80 weekly from the date of the decree. An action on this New Jersey decree was brought in May, 1898, in the Supreme Court of New York, and

recovery was allowed by the trial court for the alimony due at the date of the New Jersey decree, with interest, counsel fee and costs, and for an additional amount representing future alimony, which had accrued from the date of the decree to the commencement of the action in New York. The judgment also directed the payment of future alimony as fixed by the New Jersey decree, and awarded certain remedies for the enforcement of the decree in accordance with the relief which had been awarded in the New Jersey decree in conformity to the law of that State. The judgment thus rendered by the trial court in New York was ultimately modified by the Court of Appeals of New York by allowing the recovery only of the alimony which had been fixed in the New Jersey decree as due at its date with interest and the counsel fee, and disallowing recovery of the installments of future alimony which had accrued when the action was commenced in New York, as well as the allowance in respect to alimony thereafter to accrue. In this court three questions were presented: 1. Whether the decree of the New Jersey court was wanting in due process because of the absence of notice to the defendant; 2, whether the duty to enforce the decree for alimony was imposed upon the courts of New York by the full faith and credit clause of the Constitution; and, 3, upon the hypothesis that the full faith and credit clause was applicable, whether that clause required that the remedies afforded by the laws of New Jersey should be made available in the State of New York. Deciding that the New Jersey decree was not wanting in due process, the court came to consider the second and third questions, and held that in so far as the New Jersey decree related to alimony accrued at the time it was rendered and fixed by the decree and the counsel fee, it was entitled to be enforced in the courts of New York, but that in so far as it related to future alimony its enforcement was not commanded by the full faith and credit clause. No reference

was made to the case of *Barber* v. *Barber,* the opinion
briefly disposing of the issue as follows (p. 187): "The
decree for the payment of $8,840 was for a fixed sum
already due, and the judgment of the court below was
properly restricted to that. The provision of the payment
for alimony in the future was subject to the discretion of
the Court of Chancery of New Jersey, which might at
any time alter it, and was not a final judgment for a fixed
sum." These sentences were followed by a brief adverse
disposition of the claim that there was a right to avail for
the enforcement of the New Jersey decree in the courts of
New York of the remedies peculiar to the New Jersey
law.

When these two cases are considered together we think
there is no inevitable and necessary conflict between them,
and in any event if there be that *Lynde* v. *Lynde* must be
restricted or qualified so as to cause it not to overrule the
decision in the *Barber case.* In the first place, in the
*Lynde case* no reference whatever was made to the prior
decision, and it cannot be said that such decision was
overlooked, because it was referred to in the opinion of
the court below and was expressly cited and commented
upon in the briefs of counsel submitted in the *Lynde case.*
In the second place, in view of the elaborate and careful
nature of the opinion in *Barber* v. *Barber,* of the long
period of time which had intervened between that decision
and the decision in *Lynde* v. *Lynde,* and the fact which
is made manifest by decisions of the courts of last resort
of the several States that the rule laid down in the *Barber
case* had been accepted and acted upon by the courts of
the States generally as a final and decisive exposition of
the operation and scope of the full faith and credit clause
as applied to the subject with which the case dealt, it is
not to be conceived that it was intended by the brief
statement in the opinion in *Lynde* v. *Lynde* to announce a
new and radical departure from the settled rule of con-

stitutional construction which had prevailed for so long
a time. And nothing in the mere language used in the
*Lynde case* would justify such a conclusion, because the
reasoning expressed in that case was based solely and
exclusively on the ground that the portions of the decree
for alimony which were held to be not within the purview
of the full faith and credit clause were not so embraced,
because their enforcement "was subject to the discretion
of the Court of Chancery of New Jersey, which might at
any time alter it, . . ." In other words, the ruling
was expressly based upon the latitude of discretion which
the courts of New Jersey were assumed to possess over a
decree for the payment of future alimony. But it is said
although this be true the decision in the *Lynde case* must
be here controlling and treated as overruling the *Barber
case*, since it will be found, upon examination of the New
Jersey law which governed the New Jersey decree con-
sidered in the *Lynde case*, that such law conferred no
greater discretion upon the New Jersey Court of Chancery
as to the enforcement of past due installments of future
alimony than will be found to be possessed by the New
York courts as to the decree here in question. But this
is aside from the issue for decision, since the question here
is not whether the doctrine expounded in the *Lynde case*
was there misapplied as a result of a misconception of the
New Jersey law, but what was the doctrine which the
case announced. And, answering that question, not only
by the light of reason, but by the authoritative force of
the ruling in the *Barber case*, which had prevailed for so
many years, and by the reasoning expressed in the *Lynde
case*, we think the conclusion is inevitable that the *Lynde
case* cannot be held to have overruled the *Barber case*, and
therefore that the two cases must be interpreted in har-
mony, one with the other, and that on so doing it results:
First, that, generally speaking, where a decree is rendered
for alimony and is made payable in future installments

the right to such installments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments, since, as declared in the *Barber case*, "alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is." Second, That this general rule, however, does not obtain where by the law of the State in which a judgment for future alimony is rendered the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the installments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the installments becoming due.

It follows, therefore, from the statement which we have made of the case that the New York judgment which was relied upon came within the general rule, and, therefore, that the action of the Supreme Court of Errors of Connecticut in refusing to enforce it was in conflict with the full faith and credit clause, unless it be as a result of the law of the State of New York the judgment for future alimony in that State, even as to past due installments, was so completely within the discretion of the courts of that State as to bring it within the exceptional rule embodied in the second proposition. A consideration of this subject brings us to an investigation of the second question, which we have previously stated.

Second. *The finality of the New York judgment as to past due installments for future alimony under the law of the State of New York.*

The conception of the statute law of the State of New York and of the decisions of the courts of that State inter-

preting that law which led the Supreme Court of Errors of Connecticut to conclude that the enforcement of the judgment before it was so completely subject to the discretion of the court which had rendered it as not to entitle it to enforcement in virtue of the full faith and credit clause, was thus stated in its opinion:

"The nature, operation and effect within the State of New York of orders like that in question directing payments *in futuro* to a wife by a husband living in judicial separation, and passed in 1899 pursuant to the then provisions of statute, have been well settled by the repeated decisions of the courts of that jurisdiction. They have been declared to be tentative provisions which remain at all times within the control of the court issuing them and subject to being at any time modified or annulled. *Tonjes* v. *Tonjes,* 14 App. Div. 542. The right of modification or annulment which is thus reserved to the court is one which extends to overdue and unsatisfied payments as well as to those which may accrue in the future. *Sibley* v. *Sibley,* 66 App. Div. 552; *Goodsell* v. *Goodsell,* 94 App. Div. 443; *Kiralfy* v. *Kiralfy,* 36 Misc. 407; *Wetmore* v. *Wetmore,* 34 Misc. 640. 'The amount awarded does not exist as a debt in favor of the wife against the husband in the sense of indebtedness as generally understood.' *Tonjes* v. *Tonjes,* 14 App. Div. 542. The order is not one 'which simply directs the payment of a sum of money,' and not such an one as can have enforcement by execution. *Weber* v. *Weber,* 93 App. Div. 149. The special remedies provided in §§ 1772 and 1773 for the enforcement of the orders are exclusive. *Weber* v. *Weber, supra; Branth* v. *Branth,* 20 Civ. Pro. 33. No judgment in another court can be entered upon them. *Branth* v. *Branth, supra.*"

But we are unable to assent to the view thus taken of the statute law of New York or to concede the correctness of the effect attributed by the court to the New York decisions which were referred to.

The provisions of the Code of Civil Procedure of New York pertinent to be considered in determining the scope and effect of judgments for separation and alimony rendered by the courts of New York are copied in the margin.[1]

[1] Provisions of N. Y. Code of Civil Procedure in force in 1899:

SEC. 1762. For what causes action may be maintained.—In either of the cases specified in the next section, an action may be maintained by a husband or wife against the other party to the marriage, to procure a judgment, separating the parties from bed and board forever, or for a limited time for either of the following causes:

1. The cruel and inhuman treatment of the plaintiff by the defendant.

2. Such conduct on the part of the defendant towards the plaintiff as may render it unsafe and improper for the former to cohabit with the latter.

3. The abandonment of the plaintiff by the defendant.

4. Where the wife is plaintiff, the neglect or refusal of the defendant to provide for her.

SEC. 1763. Id.; in what cases.—Such an action may be maintained in either of the following cases:

1. Where both parties are residents of the State when the action is commenced.

2. Where the parties were married within the State and the plaintiff is a resident thereof when the action is commenced.

3. Where the parties having been married without the State have become residents of the State, and have continued to be residents thereof at least one year, and the plaintiff is such a resident when the action is commenced.

SEC. 1766. Support, maintenance, etc., of wife and children.—Where the action is brought by the wife the court may, in the final judgment of separation, give such directions as the nature and circumstances of the case require. In particular, it may compel the defendant to provide suitably for the education and maintenance of the children of the marriage, and for the support of the plaintiff, as justice requires, having regard to the circumstances of the respective parties, and the court may, in such an action, render a judgment compelling the defendant to make the provision specified in this section where, under the circumstances of the case, such a judgment is proper without rendering a judgment for separation.

SEC. 1767. Judgment for separation may be revoked.—Upon the

In considering the meaning of these provisions it must be borne in mind that the settled rule in New York is that the courts of that State have only the jurisdiction over the subject of divorce, separation and alimony conferred by statute, and that the authority to modify or amend a judgment awarding divorce and alimony must be found in the statute or it does not exist. *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456, 463; *Livingston* v. *Livingston*, 173 N. Y. 377.

---

joint application of the parties, accompanied with satisfactory evidence of their reconciliation a judgment for a separation forever, or for a limited period, rendered as prescribed in this article, may be revoked at any time by the court which rendered it, subject to such regulations and restrictions as the court thinks fit to impose.

SEC. 1769. Alimony, expenses of action, and costs; how awarded.— Where an action is brought, as prescribed in either of the last two articles, the court may, in its discretion, during the pendency thereof from time to time make and modify an order or orders requiring the husband to pay any sum or sums of money necessary to enable the wife to carry on or to defend the action, or to provide suitably for the education and maintenance of the children of the marriage, or for the support of the wife, having regard to the circumstances of the respective parties. The final judgment in such an action may award costs in favor of or against either party, and an execution may be issued for the collection thereof, as in an ordinary case; or the court may, in the judgment, or by an order made at any time direct the costs to be paid out of any property sequestered or otherwise in the power of the court.

SEC. 1771. Custody and maintenance of children and support of plaintiff.—Where an action is brought by either husband or wife, as prescribed in either of the last two articles, the court must, except as otherwise expressly prescribed in those articles, give, either in the final judgment or by one or more orders made from time to time before final judgment, such directions as justice requires between the parties for the custody, care, education and maintenance of any of the children of the marriage, and, where the action is brought by the wife, for the support of the plaintiff. The court may, by order upon the application of either party to the action, after due notice to the other, to be given in such manner as the court shall prescribe, at any time after final judgment, annul, vary or modify such directions. But no such appli-

Other than the provision in § 1767, authorizing the revocation of a judgment for separation upon the joint application of the parties, the power of the court to vary or modify a judgment for alimony if it existed in 1899 was to be found in § 1771.    It is certain that authority is

cation shall be made by a defendant unless leave to make the same shall have been previously granted by the court by order made upon or without notice, as the court in its discretion may deem proper after presentation to the court of satisfactory proof that justice requires that such an application should be entertained.

SEC. 1772. Support, maintenance, etc., of wife and children. Sequestration.—Where a judgment rendered, or an order made, as prescribed in this article, or in either of the last two articles, requires a husband to provide for the education or maintenance of any of the children of a marriage, or for the support of his wife, the court may, in its discretion, also direct him to give reasonable security, in such a manner and within such a time as it thinks proper, for the payment from time to time of the sums of money required for that purpose.  If he fails to give the security, or to make any payment required by the terms of such a judgment or order, whether he has or has not given security therefor, or to pay any sum of money which he is required to pay by an order, made as prescribed in § 1769 of this act, the court may cause his personal property, and the rents and profits of his real property, to be sequestered, and may appoint a receiver thereof.  The rents and profits, and other property, so sequestered, may be, from time to time, applied, under the direction of the court, to the payment of any of the sums of money specified in this section, as justice requires.

SEC. 1773. Id.; when enforced by punishment for contempt.—Where the husband makes default in paying any sum of money specified in the last section, as required by the judgment or order directing the payment thereof, and it appears presumptively, to the satisfaction of the court, that payment cannot be enforced by means of the proceedings prescribed in the last section, or by resorting to the security, if any, given as therein prescribed, the court may, in its decretion, make an order requiring the husband to show cause before it, at a time and place therein specified, why he should not be punished for his failure to make the payment; and thereupon proceedings must be taken to punish him, as prescribed in title third of chapter seventeenth of this act.  Such an order to show cause may also be made, without any previous sequestration, or direction to give security, where the court is satisfied that they would be ineffectual.

there given to the courts of New York to modify or vary
a decree for alimony by the following:

"The court may, by order upon the application of either
party to the action, after due notice to the other, to be
given in such manner as the court shall prescribe, at any
time after final judgment, vary or modify such directions.
But no such application shall be made by a defendant
unless leave to make the same shall have been previously
granted by the court by order made upon or without
notice, as the court in its discretion may deem proper after
presentation to the court of satisfactory proof that jus-
tice requires such an application should be entertained."

But it is equally certain that nothing in this language
expressly gives power to revoke or modify an installment
of alimony which had accrued prior to the making of an
application to vary or modify, and every reasonable im-
plication must be resorted to against the existence of such
power in the absence of clear language manifesting an
intention to confer it. The implication, however, which
arises from the failure to expressly confer authority to
retroactively modify an allowance of alimony is fortified
by the provisions which are expressed. Thus the methods
of enforcing payment of the future alimony awarded pro-
vided by the statute, all contemplate the collection and
paying over as a matter of right of the installments as
they accrue as long as the judgment remains unmodified,
c· at least until application has been made or permission
to make one in pursuance to the statute has been accorded.
And the force of this suggestion is accentuated when it is
considered that it was not unusual in New York to re-
sort to executions as upon a judgment at law to enforce
the collection of unpaid installments of alimony. *Wet-
more* v. *Wetmore*, 149 N. Y. 520, 527. Indeed, as in
principle, if it be that the power to vary or modify op-
erates retroactively and may affect past due installments
so as to relieve of the obligation to pay such installments,

it would follow in the nature of things that the power would exist to increase the amount allowed, it is additionally impossible to imply such authority in the absence of provisions plainly compelling to such conclusion. Beyond all this, when it is considered that no provision is found looking to the repayment by the wife of any installments which had been collected from the husband, in the event of a retroactive reduction of the allowance, it would seem that no power to retroactively modify was intended.

A brief consideration of the state of the law of New York concerning the power to modify allowances for alimony prior to the enactment of the provisions as to modification in question and the rulings of the court of last resort of New York on the subject of such power we think will serve to further establish the impossibility, in reason, of supposing that the statutory provisions in question conferred the broad and absolute power of retroaction as to past due installments of alimony which the court below assumed to exist. Prior to 1894 the courts of New York did not possess the power to modify a judgment in the case either of an absolute divorce or of a judicial separation, except in respect to the custody, etc., of the children of the marriage. *Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456. In the year 1894 the statute was amended to permit the court to vary or modify the provision for the support of the wife upon her application alone, on notice to the husband. Chap. 728, Laws of 1894. Subsequently, § 1771, which, by the amendment of 1894, conferred power upon the application of the wife to vary or modify the allowance, was enlarged to read as it stood in 1899, when the action was brought in which the judgment in question was rendered, that is, so as to confer authority upon the court to vary or modify an allowance of alimony on the application of either party. Chap. 891, Laws of 1895.

But in view of the well-settled doctrine prevailing in

New York, that no power exists to modify a judgment
for alimony absolute in terms, unless conferred by stat-
ute, and the practice of treating the right to collect ac-
crued installments of alimony as vested and subject to
be enforced by execution, and in view of the further fact
that decrees for alimony in New York, where authority
to modify was not expressly conferred by statute or was
not reserved in the decree at the time of rendition, created
vested rights not subject to either judicial or legislative
control (*Livingston* v. *Livingston*, 173 N. Y. 377), we
think it becomes quite clear that the mere enlargement
of the power of the court so as to permit modification of
the allowance for alimony upon the application of the
husband did not confer the authority to change or set
aside the rights of the wife in respect to installments
which were overdue at the time application was made by
the husband to modify the decree. And although we have
been referred to and can find no decision of the court of
last resort of New York dealing with the subject, the view
we have taken as an original question of the code provi-
sion in question accords with that of the First Depart-
ment of the Appellate Division of the Supreme Court of
the State of New York, announced in a decision rendered
in 1903. *Goodsell* v. *Goodsell*, 82 App. Div. 65. Nor do
we find that the New York decisions relied upon by the
lower court and cited by it to sustain its conclusion that
"the right of modification or annullment which is thus
reserved to the court is one which extends to overdue and
unsatisfied payments as well as to those which may accrue
in the future," have even a tendency to that effect. The
cases cited and relied on are *Sibley* v. *Sibley*, 66 App. Div.
552; *Goodsell* v. *Goodsell*, 94 App. Div. 443; *Kiralfy* v. *Kir-
alfy*, 36 Misc. 407, and *Wetmore* v. *Wetmore*, 34 Misc. 640.

The *Sibley case* was decided in 1901 by the Appellate
Division of the Supreme Court of New York, First De-
partment. The case was not concerned with a decree

for the payment of permanent alimony. It related to the failure, during the pendency of an action for separation, to comply with an order for the payment of temporary alimony and counsel fees. Whether such order was made *ex parte* or upon notice does not appear. Among other things the appeal presented the question of the propriety of the denial of a motion to modify the order directing the payment of alimony and counsel fees by reducing the amount directed to be paid. The order appealed from was affirmed, without prejudice, however, to the right of the appellant "to renew his application when he returns to this State and subjects himself to the jurisdiction of the court." No intimation is given in the opinion as to whether the power to reduce the amount of alimony and counsel fees could be exerted so as to have a retroactive effect. The decision in the *Goodsell case* was made in 1904 by the Appellate Division, First Department, and concerned a denial at special term of a motion to punish the defendant for contempt in not paying the difference between certain payments made as alimony by agreement between the parties and the amount ordered to be paid in the final judgment awarding an absolute divorce. The Appellate Court declined to consider the question of whether the defendant was in contempt until a report had been made by the referee who had been appointed to determine the financial ability of the defendant to pay. There was no intimation as to the extent of the power to modify an allowance of alimony. A year prior, however, in the same litigation (82 App. Div. 65) the same court, as we have already stated, decided that the provisions of the New York code giving power to modify an allowance of alimony could only have a prospective operation. It was said (p. 70):

"It may, we think, be given full force and effect by ascribing to the legislature the intention of authorizing the courts to vary or modify the allowance of alimony from

the time of the adjudication that such variation or modi-
fication is proper without making the same retroactive."

The *Kiralfy case* was a decision of the New York special
term rendered in December, 1901. The matter acted
upon was a motion to amend a final decree of divorce by
reducing the amount of alimony to a sum not merely less
than that awarded by the decree, but less than the sum
which the defendant had been paying under agreement
with the wife. The motion was granted, but it was clearly
given a prospective operation only. *Wetmore* v. *Wetmore*
was also decided in 1901 by the New York special term.
What was held was merely that the court would not re-
lieve the defendant, who had persistently evaded a decree
of absolute divorce, in which there had been awarded
future alimony for the support of the wife and children.
There is no discussion as to the extent of the power to
modify decrees of divorce in respect to alimony, and a
modification of a decree as to the amount of alimony to
be paid which is referred to in the course of the proceed-
ings plainly had only a prospective operation.

Contenting ourselves in conclusion with saying that, as
pointed out in *Lynde* v. *Lynde,* although mere modes of
execution provided by the laws of a State in which a
judgment is rendered are not, by operation of the full
faith and credit clause, obligatory upon the courts of an-
other State in which the judgment is sought to be en-
forced, nevertheless if the judgment be an enforcible judg-
ment in the State where rendered the duty to give effect
to it in another State clearly results from the full faith
and credit clause, although the modes of procedure to en-
force the collection may not be the same in both States.

It follows that the judgment of the Supreme Court of
Errors of Connecticut must be reversed and the case re-
manded to that court for further proceedings not incon-
sistent with this opinion.

*And it is so ordered.*