## IN RE HARRIS
### HARRIS *v.* FRYE ET UX.

[No. 187, October Term, 1951.]

*Decided June 13, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Dallas F. Nicholas* and *Donald C. Sponseller* for the appellant.

*E. O. Weant, Jr.,* with whom was *A. Earl Shipley* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a decree awarding the custody of Jo Ann Harris, a minor, to the appellees, Morris D. Frye and Mary E. Frye, his wife.

The appellant, Josephine Barton Harris, the mother of the minor, a resident of Toledo, Ohio, was married to Frank Morris Harris, in Toledo, on August 31, 1946. The infant, Jo Ann Harris, was born to these parties on September 15, 1947. They separated in January, 1948, and the wife sued for divorce. A decree was passed by the Ohio Court on May 6, 1949, dissolving the marriage relation and awarding the custody of Jo Ann to the mother, the appellant here. The father, Frank Harris, was ordered by the Ohio Court to pay alimony and a certain amount for the support of the infant, none of which he has ever paid.

On June 18, 1951, the appellant filed in the Circuit Court for Carroll County, Maryland, a petition alleging that she was a resident of Toledo, Ohio, and the mother of Jo Ann, and the granting of the custody to her by the Ohio Court in the divorce case aforesaid. She also alleged that about November 24, 1948, Mary E. Frye, one of the appellees, brought the infant, Jo Ann, from Toledo, Ohio, to Carroll County, Maryland, for the purpose of a visit. That in April, 1949; in January, 1950; at

Easter in 1950; in September, 1950; and finally on June 5, 1951, she visited the home of Mary E. Frye and each time was refused permission to take her child back to Ohio, although she demanded that the child be delivered to her. She further alleged that the said Mary E. Frye was wrongfully withholding the said infant from appellant's lawful custody. She asked that the child be returned to her. A hearing on the petition was held in open court on June 20, 1951. The testimony taken at that hearing does not appear in the appendices nor in the transcript.

On August 4, 1951, the chancellor filed an opinion in the case, in which he found that although the child, Jo Ann Harris, was not in the State of Ohio at the time of the divorce decree there, as both parents were living in Toledo, Ohio, at that time the domicile of the child was Toledo, Ohio, and that the Ohio Court had jurisdiction to award the custody of the child in the divorce case to the mother. He cited many authorities to sustain that finding. The chancellor also found in that opinion, under the decisions cited therein, that decrees of the Ohio Courts determining custody of minor children are subject to modification or annulment by the Court which entered them. He also found under authorities cited therein, including *People of State of New York ex rel. Halvey v. Halvey,* 330 U. S. 610, 67 S. Ct. 903, 91 L. Ed. 1133; *Sistare v. Sistare,* 218 U. S. 1, 30 S. Ct. 682, 54 L. Ed. 905; *Sampsell v. Superior Court,* 32 Cal. 2d 763, 197 P. 2d 739; *Finlay v. Finlay,* 240 N. Y. 429, 148 N. E. 624, 40 A. L. R. 937; and *Ex Parte State ex rel. McLaughlin,* 250 Ala. 579, 35 S. 2d 507; that as the mother had submitted to the jurisdiction of the Carroll County, Maryland, Court by filing the petition and being present in that Court; that as the husband was present and testified; and that as the child was living in Carroll County and was produced in Court by the appellees, who were residents of that county and subject to the jurisdiction of that Court; he had jurisdiction to hear and determine what was for the best interests and wel-

fare of the infant, Jo Ann Harris, and to determine her custody.

In that opinion filed on August 4, 1951, the chancellor also found the following:

"The testimony showed that at the hearing of the divorce case, which was not contested by the husband, the only witnesses who testified were the wife, Josephine Barton Harris, and her mother, Anna May Stewart Barton. The proof was taken on November 17, 1948, but the decree was not passed until May 6, 1949. It is necessary to mention these facts for the reason that there is some testimony in the instant case that the conduct of Josephine Barton Harris might have been improper during the period which elapsed between the taking of the testimony and the passage of the decree. This evidence was not brought to the attention of the Ohio Court and it has a material bearing on the fitness of the plaintiff to be entrusted with the custody of the child.

"The plaintiff admitted she knew Robert Sharper and that he is her second cousin. She denied that she ever lived with him. She separated from her husband on January 17, 1948, and she spent the next night with Duvall Erwin's family. Then she went to 811 Woodland Avenue then to 426½ Hamilton Street, where she lived for a little over a year and then she returned to 811 Woodland Avenue, where she now lives. She lived in Hamilton Street at the time the divorce proceedings were instituted and at the time the hearing was had. The plaintiff testified she last saw Sharper in July, 1948, but admitted that in February, 1949, he entered her in the Hospital as Josephine Sharper. Her mother stated she saw Sharper in the Hamilton Street house 'about a couple or three times'. The former husband of the plaintiff testified

that he called to see the plaintiff at the Hamilton Street house and he found in her bedroom some men's clothing and that she told him they belonged to Sharper and that she had planned to marry Bob. Mrs. Mary Frye testified that in October, 1948, she visited in Toledo and it was then she got the child. That at that time the grand-mother asked her to bring the child to Maryland because she did not approve of her daughter living with this man nor did she think it proper for the child to be sleeping with its mother and this man. She also testified that Josephine Harris told her she was living with this man named Bob. Mrs. Frye said: 'She (the grandmother) wished I would take the child back with me. At first, I refused because—I don't know—I wasn't quite ready. I didn't want to do that, because I was planning to go back through New York and visit some relatives and I knew if I took the child, well, I couldn't go. After seeing the condition, I went into the mother's room and I saw these clothes—men's clothes—a very shabby unclean place; whiskey bottles, whiskey glasses sitting half full of whiskey and cigarette butts around— a very filthy place, and the bathroom—honest it looked as if no one used it. I don't see how any one could use it, it was a filthy place.' Both the child's mother and the grandmother deny that the plaintiff was living with Robert Sharper and they state they had agreed to permit Jo Ann to come to Maryland with Mrs. Frye for a visit. Whether the child came for a visit is immaterial to this inquiry, for the court must consider what is for the best interests and welfare of the child. It was conceded that the child has a good home and is well cared for. Morris D. Frye and Mary E. Frye, his wife, are substantial people. They own their own home; they are industrious

and are respected. Morris Frye is a chauffeur, cook and house man for the Misses Chase and has been employed by the Chase family for over forty-five years. His wife, in addition to her household duties, is a music teacher. Both are attached to the child, who has been in their home since November, 1948. The mother plans to take the child to the home of Lucius Jackson and his wife, 811 Woodland Avenue, Toledo, Ohio, where she says she lives. Her aunt would assist her in rearing the child. The father of the child said that he had no objection to either Lucius Jackson or his wife or the house wherein they live, but he believed the child would be better off living in Maryland.

"From the testimony in this case it is plain that the best interests of the child will be promoted by permitting her to remain in the custody of Morris D. and Mary E. Frye. The child's interests must not be sacrificed to gratify the mother's maternal love. *Carter v. Carter,* 156 Md. 500; 144 A. 490; *Pitts v. Pitts,* 181 Md. 182, 29 A. 2d 300.

"The child was a little over a year old when it came into the Frye home and it has been in that home until now. It has become attached to the Fryes and they exhibit love and affection towards her. In fact, Mrs. Frye might be said to be the only mother the child knows. The child was in Court at the hearing and did not recognize either its mother or grandmother. To take the child away from its present home and turn it over to the plaintiff to be taken into a large city to live among strangers would not, in the court's judgment, be conductive to its welfare."

On the same day, August 4, 1951, the chancellor filed a decree assuming jurisdiction over Jo Ann Harris and awarding her custody to the appellees, subject to

further order of the Court, with the right and privilege on the part of the mother and father of the infant to visit the child at reasonable times. This decree became enrolled "after the expiration of thirty days from the date of same, the day of the date inclusive". Rule 48, General Equity Rules of the Court of Appeals. General Equity Rule 50, provides in part: "No rehearing shall be granted after the enrollment of the decree or decretal order; and if the decree or order has been executed, parties who have acted on the faith of such decree or order shall not be prejudiced by such decree or order being reversed or varied." No appeal was taken from this decree within the thirty days from its date as provided by Rule 5 of the Rules of the Court of Appeals. Therefore, the jurisdiction of the chancellor over the infant was finally determined by that decree and the custody of the infant was determined, subject to further order of the Court.

On October 3, 1951, the appellant filed a petition in this case. In this petition, among other things, she recited the filing of her former petition on June 18, 1951, and the decree of the chancellor thereon. She also alleged the following: "That prior to the passage of said decree your Honorable Court requested an investigation of the character and reputation of your petitioner in the City of Toledo, Ohio, as well as conditions in the home of Mr. and Mrs. Lucius Jackson, 811 Woodland Avenue, in said City, where your petitioner planned to take said child in the event she was awarded its custody. That the report of said investigation did not reach your Honorable Court until several days after the passage of the decree aforesaid, and that the contents of said report discloses certain information which your petitioner believes if known to your Honor at the time of the passage of said decree may have caused a different conclusion to be reached, a copy of which report is filed herewith and marked 'Petitioner's Exhibit A'. That your petitioner believes and so alleges that said decree was passed because your Honorable Court was

not sufficiently acquainted with the reputation, character and mode of living of your petitioner in the City of Toledo, Ohio, as since disclosed by said investigation; and that she has been prejudiced by the failure of your Honorable Court to receive the information which she alleges is vital to a just and equitable ruling in this cause. Wherefore your petitioner prays your Honorable Court to reconsider its decree passed on the said 4th day of August, 1951, and to assign a date for further hearing in the matter of the custody of the said Jo Ann Harris so as to permit the information disclosed by said investigation report to be considered by your Honorable Court in passing upon the custody of said infant."

After hearing in open court the chancellor filed an order on December 18, 1951, that the relief prayed in the petition filed herein on October 3, 1951, be, and the same is hereby denied. An appeal to this Court was filed on January 5, 1952. The chancellor regarded this petition as one for further change of custody and we will so regard it here.

At the hearing held by the chancellor on November 2, 1951, on this petition of October 3, 1951, it was shown that on June 27, 1951, before the filing of the decree, the chancellor had written a letter to the judge of the Juvenile Court at Toledo, Ohio, advising him of the proceeding in Carroll County, Maryland, and asking that the home of Lucius Jackson in Toledo be investigated and that a report be given on the conduct of Josephine Barton Harris. This report was not received by the chancellor until about August 8, 1951, after the passage of the decree of August 4, 1951. That report from the Probation Counselor of the Ohio Court stated, among other things, that the Jacksons were "hardworking, honest Christian people", able to care for the child. Neighbors and friends reported the mother to be a steady worker and "a good girl". The report also stated: "Mrs. Harris reports Bob Sharper is her cousin and did take her to the hospital in February 1949 when she suddenly became ill. She stated the hospital attendant

concluded Bob was her husband when he accompanied her to the hospital and inquired information from him and it was a short time later he discovered why the information had been taken. We were unable to contact Mr. Sharper since he no longer lives in Toledo. Mrs. Harris has been employed at the Ashland Avenue Convalescent Home, 2283 Ashland Ave. since June 1951; the East Side Hospital where she was employed when you talked with her closed and she secured work as a nurses' aid at the convalescent home. Her present employer when interviewed reported her to be reliable, truthful, very much a lady who is doing satisfactory work; Maumee Valley Hospital reports she was employed as a nurses' aid for about five months in 1949, reported she was giddy and did not always report for work. * * * We have been unable to uncover evidence proving Mrs. Harris unfit to have custody of her child; Mr. Harris claims Mrs. Harris is a 'large' drinker and frequents taverns but failed to provide evidence of such behavior. During an office visit he admitted he had not seen much of her since the divorce. We recommend Jo Ann be released as soon as possible to her mother, Josephine Harris, to live in the home of Mr. and Mrs. Lucius Jackson. We will notify the parents of our recommendation." Before the chancellor, C. D. Sutfield, an attorney from Toledo who represented the appellant in the divorce case in Ohio, testified for the appellant. He said he had known the appellant and the Jacksons for over twenty years and they were "church people". The Jacksons own their own home, located in the best colored district of Toledo, about three blocks from a school. He sees the appellant two or three times a month and assumed that she lives with the Jacksons because he sees her there. He said he visited her professionally in November 1948, at 426½ Hamilton Street, where she occupied an upstairs room and that he did not know Bob Sharper. Witnesses also testified that the home of the appellees was a proper home for the infant.

It was admitted in the argument in this Court that the infant was well taken care of in the home of the appellees, who are substantial people of good character. The child, now over four years of age, has been in the custody of the appellees since she was fourteen months old. The only reason advanced for a change of custody is to satisfy the maternal affection. Of course, in cases involving the custody of children, the welfare of the infant is the sole consideration. *Stimis v. Stimis,* 186 Md. 489, 491, 47 A. 2d 497, and cases there cited. In this case, the chancellor had all the parties before him and his conclusions as to the best interests of the child should not be reversed unless there is some sound reason to do so. *Kartman v. Kartman,* 163 Md. 19, 23, 161 A. 269. *Pitts v. Pitts,* 181 Md. 182, 190, 29 A. 2d 300, and cases there cited. We find no such reason. The order will be affirmed.

*Order affirmed, with costs.*