EUDORA S. VAN HORN, Respondent, v. FRANK M. VAN HORN, Appellant, Impleaded with PATRICK A. HALPIN, Defendant.

First Department, April 29, 1921.

Husband and wife — separation — action on separation agreement to recover back payments — foreign divorce — merger in foreign decree of separation agreement with respect to maintenance and custody of children — reservation in foreign decree of power to modify or annul provisions as to alimony and support and custody of children — power of courts over divorce actions — failure to apply to foreign court in case of violation of decree — acts of plaintiff not constituting breach of agreement — repudiation of agreement by defendant not made in good faith — new agreement not shown — effect of repudiation of separation agreement — verdict for plaintiff sustained by evidence.

In an action by a wife to recover back payments under a separation agreement, it appeared that the parties entered into the agreement whereby the husband agreed to pay to the wife so much per month for her maintenance and that of their two children; that later the wife obtained a divorce in Nevada wherein it was decreed that the custody of the children " be and the same is hereby awarded as heretofore provided for by the conditions and terms of the said agreement  *   *   *   which said agreement

in.all its parts and provisions is, by reference thereto, hereby made a part
of this decree." The defendant interposed the defense that the separa-
tion agreement was merged in the Nevada decree and that that decree by
reason of the power reserved to the court therein to modify it respecting
the alimony of the wife and support and custody of the children was
inconclusive and unenforcible in this State; that the plaintiff had violated
the terms of the separation agreement and that a new agreement had been
made between the parties abrogating the old.

*Held,* that, conceding the separation agreement was in fact merged in the
Nevada decree with respect to alimony and the support of the children,
then it was incumbent upon the husband to apply to the Nevada court
for any relief that he desired based on a violation of the decree; otherwise
he must be deemed to have waived any objections he might have thereto.

The provisions of the Nevada decree reserving to the court the power to
modify or annul the provisions thereof with respect to the support of
the plaintiff and the children did not give the Nevada court the power to
modify the decree with respect to accrued alimony, and as to accrued
alimony the decree was final and not inconclusive.

The plaintiff could have consented that the agreement be merged in the
decree or could have rested on her rights under it; and with respect to
alimony and the support of the children it was intended to continue the
agreement as such without merging it in the decree, in which it was not
set forth, until further application should be made to the court.

Determining the action on the theory on which it was brought, there was
no breach of the separation agreement by the wife by the mere failure
to account for purchases made for the youngest son with the monthly
allowance of twelve dollars, since such accounting was not insisted upon
for more than six months and an account was actually rendered as soon
as the husband complained;

Or by taking the boy out of the city for a short time on two occasions
where it appeared that when he was taken it was for his own benefit, and,
though defendant's consent was not obtained, the plaintiff was unable to
communicate with the defendant on one occasion and on the other the
defendant was notified by the boy of the intended trip;

Or by the wife's maintaining a residence outside of the city of New York,
where it also appeared that she maintained a residence therein as required
by the agreement, and that there was no interference with the rights
of the father;

Or by the wife's failing to send the boy to particular places at particular
times to join his father, since the agreement did not obligate her to do
so, and there is no evidence that the father was refused the custody of
the boy at any time when he was entitled thereto;

Or by the sons' being placed in a school not approved by the father and
the trustee, where such failure was due to the unwillingness of the sons
so to attend a school approved of by the father.

The jury was warranted in finding that the defendant was unreasonable
and did not act in good faith in attempting to repudiate the agreement

on account of the plaintiff's having taken the boy on two trips to the seashore.

On the issue with respect to the making of a new agreement by which the husband claimed he was released from the separation agreement or the Nevada decree, the evidence warranted the jury in finding in favor of the wife.

Where the husband has repudiated a separation agreement he cannot complain that an action subsequently brought by the wife in the assertion of her rights constitutes a molestation or interference with him in violation of the provisions of the agreement which he claimed had already been terminated and by which he refused further to be bound.

On all the evidence, *held,* that the verdict of the jury in favor of the plaintiff was amply sustained.

APPEAL by the defendant, Frank M. Van Horn, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 3d day of June, 1920, on the verdict of a jury, and also from an order entered in said clerk's office on the 27th day of May, 1920, denying said defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Martin W. Littleton* of counsel [*Edwin W. Willcox,* attorney], for the appellant.

*Luke D. Stapleton* of counsel [*Edmonds Putney* with him on the brief; *Putney, Twombly & Putney,* attorneys], for the respondent.

LAUGHLIN, J.:

Appellant and the plaintiff were married on the 18th of November, 1891. They lived together until 1908 and then separated and thereafter on the 29th of April, 1910, executed a formal separation agreement with the defendant Halpin as trustee. It is recited in the separation agreement that the husband and wife were then living separate and apart and that three children had been born to them. The wife was awarded their custody. It provided that the husband and wife should continue to live separate and apart each free from the other's marital control as if unmarried; and that they were at liberty to reside anywhere except that the wife was not to reside outside of the city of New York without the consent of the husband while the youngest child, who was then

nine years of age, resided with her, unless with the approval of the trustee. Plaintiff brought an action for divorce in the Second Judicial District Court of Nevada in Washoe county against her husband and on the 14th of March, 1911, on his appearance therein, the court having full jurisdiction of the parties, a decree of divorce was granted in favor of the plaintiff on the ground of extreme cruelty and willful desertion for more than one year. On the 4th of May, 1911, the decree was modified by striking out the recital that one of the grounds upon which it was granted was extreme cruelty. By the separation· agreement the husband agreed to pay ·to the trustee during the life of the wife or until she remarried, for her use and benefit so long as she observed the covenants, conditions and provisions of the agreement, the sum of $2,500 per annum in equal monthly payments, commencing on the 1st of May, 1910, and in addition thereto, one-fifth of his annual income in excess of $10,000 as shown by the books of A. B. Leach & Company, or otherwise on inspection by the trustee at the end of each fiscal year and he further agreed to take out and carry a policy of life insurance on his own life payable to the wife as beneficiary, provided she survived him and did not remarry before his death, and to take out and carry until December 11, 1913, insurance on his own life aggregating $20,000 payable to the three· children in equal shares and $10,000 from that date until the 29th of December, 1916, payable to the two younger children. It was provided that the parties should have equal communication with, access to, control and custody of the children until they respectively attained their majority but they were to reside with their mother provided she resided in the city of New York or elsewhere with the consent of the trustee; and the husband was given the option to have the full custody of the children for week-ends during the day time and on special occasions and legal holidays and on special occasions from Friday until Monday and at such other times as he should request on giving twenty-four hours' notice thereof. The husband further agreed to pay to the trustee $33.35 per month for each of the children during minority, said amount to be paid by the trustee to the wife and to be applied by her toward the maintenance of the child or children, and in

addition thereto, for each child during minority, one-thirtieth part of his annual income in excess of $10,000 to be ascertained in the manner already stated. The 8th paragraph contained provisions for further payments by the husband for the education, clothing and other expenses of the children; and by the 9th paragraph he was given the control and direction of their education but obligated to consult and advise with his wife with respect thereto and the trustee was to be arbitrator of any dispute or difference between them in that regard. Each agreed not to influence the children against the other. The 11th paragraph contained provisions for further contribution by the husband toward the rental of an apartment until the termination of an existing lease thereon. The wife agreed not to contract any debts at the expense of her husband and to save him harmless in that regard, and it was provided that he might deduct from the payments to be made any amount that he might be obliged to pay on her account. By the 14th paragraph it was provided, among other things, that if any action or proceeding should be brought to compel or induce the husband to pay any alimony or allowance to his wife other than as therein provided, or if she should take any proceeding against him for the restitution of conjugal rights or to compel him to cohabit with her, or if by or through her consent or procurement he should be otherwise annoyed or molested by or on her behalf, or if she should fail to perform and observe the provisions of the agreement, then, at his option, the separation agreement should become null and void and of no effect excepting with respect to accrued rights thereunder. It was further provided that in case a dispute should arise between the husband and wife with respect to any of the provisions of the agreement or the care, control or custody of the children, the trustee should decide with respect thereto and his decision should be binding.

The Nevada court made findings of fact, finding, among other things, that a written agreement was entered into by the plaintiff and the defendant on the 29th of April, 1910, " for the benefit of said children, providing for their support and their custody, as set out by the terms of said agreement," and found as conclusions of law, among other things, that

the custody of the children " has been heretofore and is hereby provided for by the terms of .said agreement," and ordered " that a decree be entered in this action in accordance therewith." It was then ordered, adjudged and decreed that the bonds of matrimony existing between the parties be forever dissolved and that the custody of the children " be and the same is hereby awarded as heretofore provided for by the conditions and terms of· the said agreement of .April 29, 1910, between the plaintiff and the defendant, which said agreement in all its parts and provisions is, by reference thereto, hereby made part of this decree," and that an application might be made by either party upon notice to the other " for such modification or annulment of the provisions of this decree touching upon the support of the plaintiff, and the support and custody of the said children, as may be just."

The plaintiff herein alleged that the defendant made certain payments under the agreement down to and including the month of August, 1911; that during the year from May 1, 1911, to May 1, 1912, he received from A. B. Leach & Company the sum of $15,000 over and above his drawing account of $10,000, but failed to pay any. part thereof in accordance with the agreement and has failed to pay the plaintiff anything under the agreement since the month of September, 1911, and has failed and refused to pay the monthly allowance for the clothing of the youngest child, and in the fall of 1910 wrongfully neglected ˙ and refused to provide for the education of the two older children, and on the 26th of August, 1911, notified plaintiff through the trustee that he would not make any further payment to her, and that he has not made any further payment ˙to her or to the trustee for her use and benefit since that time; that she did not make any written statement of her expenditures of the $12 a month on account of the youngest child until the 4th of June, 1911, at which time she furnished a statement of all such expenditures to that date but that the defendant made no complaint with respect to her failure in this regard until May, 1911, when he demanded a statement and she furnished it and he received and retained it without objection and that he has waived a strict performance of the provisions of the

agreement relating to the furnishing of such statements, but that in all other respects she has duly performed the terms and conditions of the agreement; that prior to the commencement of the action she requested the trustee to bring the action but he neglected and refused so to do. She demanded judgment for $8,722.46 and interest on $208.34 thereof from the first of each month commencing with September, 1911, and interest on $12 a month thereof from the first day of each month commencing with May 1, 1911, and on $4,500 from the 1st of May, 1912, together with costs.

The defendant put in issue many of the material allegations of the complaint and pleaded as a first defense that the agreement was merged in the Nevada decree and that the provisions of the decree rendered it so inconclusive that the courts of this State would not enforce it. For a second defense, acts of the plaintiff are alleged, which it is claimed constituted a breach of the agreement on her part. They consist in her taking the youngest child out of the State without his permission, in refusing to permit him to take the child over week-ends and in failing to render a statement of the expenditures for clothing for the child, in refusing to allow the child to attend certain schools selected by him, in influencing the children against him and instituting a certain action against him to have the separation agreement declared null and void, which it is claimed molested him in violation of the plaintiff's agreement, and on these grounds he claimed that the plaintiff had breached the separation agreement and forfeited her rights thereunder as well as under the Nevada decree. For a third defense, he alleged that in the month of April, 1914, the separation agreement was canceled by mutual consent of the parties and all of the defendant's obligations thereunder for alimony were remitted in consideration of a new agreement by which he was to pay plaintiff $100 a month for her support and $50 a month for the support of the youngest child, over whose education he was to have control, and that for a long time thereafter he performed that agreement and the plaintiff acquiesced in and abided thereby and that he has duly performed it but that the plaintiff has breached it.

Evidence was offered on the part of the plaintiff tending

to support the allegations of the complaint and on the part of the defendant tending to controvert the testimony offered in behalf of plaintiff and to support the issues presented by the answer. After the opening of the case and at the close of the plaintiff's case, defendant moved for a dismissal on the ground that the separation agreement was merged in the Nevada judgment which was inconclusive in its nature with respect to alimony and support for the children and, therefore, not enforcible in another jurisdiction and excepted to the denial of the motion; and he renewed the motion at the close of the evidence and excepted to the denial thereof.

It is urged in behalf of the appellant that the separation agreement was merged in the Nevada decree, which is so inconclusive in its nature that the Nevada court could modify or annul it with respect to the alimony accrued thereunder and that, therefore, it is not enforcible in another jurisdiction. I am of opinion that those contentions are unsound, and that if the separation agreement were merged in the decree, the case is left in a more favorable light to the plaintiff than the theory to which the trial court confined the plaintiff and on which the case was submitted to the jury. On the assumption that the separation agreement was adopted with respect to alimony and the support of the children, as doubtless it might have been (*Julier* v. *Julier,* 62 Ohio, 90; *Warren* v. *Warren,* 116 Minn. 458; *Wallace* v. *Wallace,* 74 N. H. 256; *Levy* v. *Levy,* 149 App. Div. 561) and became merged in the decree, if the defendant claimed there was any violation of the decree, as thus constituted, on the part of the plaintiff sufficient to relieve him from liability for the alimony and support of the children therein provided for, I think it was incumbent on him to apply to the Nevada court for such relief and that having failed so to do he should be deemed to have waived any objection he might have on that ground with respect to moneys due for alimony and support of the children for the recovery of which this action was brought. If the separation agreement was merged in the decree the court, I think, would have been warranted in submitting to the jury only the question with respect to the amount unpaid. The provisions of the Nevada decree reserving to the court the power to modify or annul the provisions thereof with

respect to the support of the plaintiff or the children are in substance the same as the provisions of section 1771 of the Code of Civil Procedure, as such section existed in 1899, which were construed by the Supreme Court of the United States in *Sistare* v. *Sistare* (218 U. S. 1), as not reserving to the court the power to modify a decree with respect to *accrued* alimony; and in that case it was held that an action might be maintained in a sister State on such a decree for the recovery of accrued alimony, and that the full faith and credit clause of the Federal Constitution (Art. 4, § 1) was applicable thereto and rendered it the duty of the court of the sister State to enforce payment. The authority of courts over divorce actions and to award alimony and support for children is not inherent but is derived from statutory law (*Lynde* v. *Lynde*, 41 App. Div. 280; affd., 162 N. Y. 405; 181 U. S. 183), and, therefore, a divorce decree, such as the Nevada decree, reserving to the court authority on application on due notice to modify the provisions with respect to alimony and the support of the children, should not be construed as reserving to the court greater authority than would be so reserved by a statute to the same effect; since, as was held in *Sistare* v. *Sistare* (*supra*), a statute to that effect should be construed as authorizing a modification with respect to payments required to be made after the application to the court and not as authorizing a change with respect to payments which have theretofore accrued — such a decree should be likewise construed as final with respect to alimony accrued thereunder before modification. There was no matrimonial domicile of these parties in Nevada. The plaintiff evidently took up a residence there solely for the purpose of obtaining the divorce and it is to be inferred that the defendant consented thereto for he voluntarily appeared in the action. If it were held that the divorce decree with respect to alimony and the support of the children was so inconclusive that the Nevada court could modify it with respect to accrued payments, the courts of another State could afford the plaintiff no relief even though the defendant wholly failed to perform his obligations thereunder (*Lynde* v. *Lynde*, *supra*; *Sistare* v. *Sistare*, *supra*), and since the defendant was not within the jurisdiction of the Nevada court, and presumably, as he never resided there,

had no property in that State, the decree in so far as it provided for alimony and the support of the children would, in effect, be a nullity.   This is a cogent argument in support of so construing the decree, assuming that the separation agreement was merged therein, that the reserved authority of the court to modify the alimony and provisions for the support of the children could apply only to the payments thereafter accruing, so that with respect to accrued payments the decree should be deemed to establish an indebtedness enforcible against the defendant in any jurisdiction; and it is also a forceful argument that it was not intended that the separation agreement should be deemed merged in the divorce decree.   As held in *Sistare* v. *Sistare* (*supra*), it was assumed in *Lynde* v. *Lynde* (*supra*) that the New Jersey court which granted the divorce had reserved full control over the decree with respect to payments which had accrued thereunder as well as those to fall due after an application should be made to the court for a modification of the provisions of the decree awarding alimony.   Neither the statutes of New Jersey nor the provisions of the decree are quoted or construed in any of the opinions and, therefore, in *Sistare* v. *Sistare* (*supra*) the court held that the theory of the decision in *Lynde* v. *Lynde* (*supra*) was right, but the court did not consider the facts or hold that they warranted the assumption that the New Jersey court had lawfully reserved control over the provisions of the decree with respect to accrued alimony. I am of opinion that *Sistare* v. *Sistare* (*supra*) must be deemed to have overruled any and all prior decisions tending to support the view that the courts of a sister State should decline jurisdiction to aid in the enforcement of a decree to the effect of the Nevada decree, by awarding a judgment against a husband for failing to make payments which, as here, had accrued under the decree and from payment of which he had not been relieved by the court which made the decree.   I am of opinion that we should follow *Sistare* v. *Sistare* (*supra*) and proceed upon the assumption that the reserved authority does not relate to payments which have accrued.   On that theory it would, I think, be immaterial whether there was uncontroverted evidence of a violation

of the separation agreement by the plaintiff for defendant did not apply to the Nevada court or obtain an order relieving him from liability for these payments. The trial court, however, ruled that the separation agreement was not merged in the divorce decree and much may be said in support of that ruling. The plaintiff in the divorce action did not ask for alimony. She asked for the custody of the children and referred to the separation agreement as giving their custody to her and asked that it be made part of the decree, and while the entire agreement was made part of the decree, by reference, its terms are only stated in the decree in connection with the award of the custody of the children to her. The separation agreement contains provisions not appropriate to a decree of divorce. It provided for the husband and wife living separate and apart and that neither should molest the other or assert conjugal rights and provided that all payments should be made to the trustee. Such provisions would be inappropriate and unusual in a decree for absolute divorce. Moreover, the Nevada court, without the consent of the parties and issues duly presented and the presence of the trustee and adequate proof, could neither have annulled nor have modified the separation agreement nor have changed the obligations of the husband with respect to the support of his wife and children as provided in the separation agreement. (*Galusha* v. *Galusha*, 116 N. Y. 635; 138 id. 283; *Johnson* v. *Johnson*, 206 id. 561. See, also, *Whitney* v. *Whitney Elevator & Warehouse Co.*, 180 Fed. Rep. 187.) The plaintiff could have consented that the agreement be merged in the decree or could have rested on her rights under it; and with respect to alimony and the support of the children, I think it was intended to continue the agreement as such without merging it in the decree, in which it is not set forth, until a further application should be made to the court. The Nevada court by the decree did assume to reserve the right to modify the provisions of the agreement with respect to the support of the wife and children and possibly under that reservation it could have done so with respect to future payments, but not as to accrued payments (*Sistare* v. *Sistare, supra*), on proper proof, but I think it was meant to let those matters stand as provided in the separation

agreement unless and until a further application should be made to the court for modification as to the future, and since none was made we are not concerned with any point relating to the reserved authority of that court as to payments to accrue in the future. If as claimed by appellant the separation agreement was merged in the decree the case involved only a computation of unpaid installments and interest; but I am of opinion that the judgment can be sustained on the theory on which the case was tried and submitted to the jury. The alleged violations of the separation agreement by the plaintiff were trivial. In so far as the evidence relates to her failure to render an account of purchases made for the youngest son with the monthly allowance of twelve dollars, it was waived by a failure to insist upon the rendition of the first of such accounts for nearly six months; and as soon as defendant complained an account was rendered which was retained by defendant.

Another alleged violation of the separation agreement by the plaintiff relates to the provisions by which she agreed not to reside outside of the city of New York without the defendant's consent or the approval of the trustee while the youngest son should be living and dwelling with her and that the father should be at liberty to take the child on certain occasions. The uncontroverted evidence shows that at all the times in question plaintiff maintained a residence for herself and the boy in the city of New York and that they there resided. On two occasions, without obtaining the consent of the defendant or the approval of the trustee, she took the boy out of the city for a short time but did not change their residence. One of these trips was on Sunday, July 2, 1911, when she and the boy went to Providence, R. I., to visit her former teacher and remained until the fifth. This was over a week-end and the boy had been with his father on Saturday and he had made no request to see the boy on Sunday and she endeavored to notify the defendant at his apartment before going but was unable to get in communication with him. The other was to Seaside Park, N. J., for a visit to the boy's aunt who had invited them, where they remained three weeks. Plaintiff testified that the boy had been in the city all summer and was not accustomed to city life and the

weather had been extremely hot; and she evidently was of opinion that the outing would be beneficial to him. With respect to this trip, before leaving, the boy wrote a letter to his father stating that they were going to visit the aunt. On each of these occasions, it appears by the testimony of the defendant that he was expecting to see the boy and these trips deprived him of the opportunity of so doing. On discovering that the plaintiff had taken the boy to Providence, defendant wrote the trustee protesting that this was a violation of the agreement and the plaintiff admitted that the letter was transmitted to her. On receiving the boy's letter, with respect to the contemplated visit to Seaside Park, he also wrote the trustee claiming that it was a violation of his rights under the agreement and that he would present the matter to his attorneys and that he had instructed them to take immediate action to protect his rights. This letter was likewise transmitted to the plaintiff but the date of its receipt by her is not shown. One week thereafter, and evidently while plaintiff and the boy were at Seaside Park, defendant wrote the letter of August 26, 1911, to the trustee stating that under the advice of his attorney he would make no further payment under the agreement. I am of opinion that in the circumstances the jury were warranted in finding that the defendant was unreasonable and did not act in good faith in attempting to repudiate the agreement on account of the plaintiff's having taken the boy on those two trips. There was evidently no intent to alienate the boy from his father and it was manifestly for the benefit of the boy's health to have the outing at that time at the seashore. The father in his desire to find a technical ground for repudiating the contract, might have refused his consent if it had been asked; but it is unthinkable that the trustee would not have approved. Mere failure of the plaintiff to obtain that approval certainly was insufficient as matter of law to warrant the defendant in repudiating his obligations under the contract; and I am of opinion that the finding of the jury that in the circumstances it did not constitute such a breach of the contract as relieved the defendant from his obligations thereunder, was fairly warranted, for this is not like an ordinary business contract and these were merely technical violations of the

agreement by the plaintiff and the circumstances show that she was acting in good faith and warrant the finding of justification. (*Duryea* v. *Bliven*, 122 N. Y. 567; *Benesch* v. *Benesch*, 106 Misc. Rep. 395, 402.) The case is not analogous to *Muth* v. *Wuest* (76 App. Div. 332), where the father was entitled to see his child each week and the mother took him to Europe for a period of six months, which was held as matter of law to be a violation of his rights. The other complaints with respect to violations concerning the provisions giving the defendant the right to have the custody of the boy are of no serious moment. They are predicated principally upon the failure of the plaintiff to send the boy to particular places at particular times to join his father. Plaintiff was under no obligation under the agreement to take the boy to his father and there is no evidence of a call by the defendant for the boy at any time at which he was entitled to his custody and of a refusal by the plaintiff to allow him to have such custody. Other complaints are made with respect to a violation of the defendant's right of control with respect to the boy's education. There is evidence to the effect that on an occasion in the spring of 1911 defendant was desirous of having two of the boys change from the school they had been attending to the Horace Mann School and the trustee approved of this; but the boys would not comply with the defendant's wishes in that regard. The evidence fairly shows that this was through the unwillingness of the boys to comply with the wishes of their father and that the plaintiff was not responsible therefor. Various alleged errors in rulings with respect to evidence are assigned as grounds for reversal. They have all been examined and we find no error to the serious prejudice of the appellant or worthy of discussion.

The court in submitting the case to the jury instructed them, among other things, that the burden of proof was on the plaintiff to establish her cause of action by a fair preponderance of the evidence, and fully instructed them with respect to their duties in weighing testimony and determining the credibility of witnesses; that the plaintiff claimed for a balance owing under the separation agreement from the 1st day of September, 1911, to the time of the commencement of the action, which was the 28th of March, 1913; that the

defendant claimed that the plaintiff was guilty of certain breaches of the agreement prior to September 1, 1911, which warranted him 'in making no further payments thereunder; that there were controversies between the parties commencing in April or May, 1911, and continuing down to September that year and particularly with respect to that part of the agreement relating to the custody of the youngest child; that on two occasions plaintiff took the child out of the city without obtaining in advance the permission of the defendant or the approval of the trustee and left it to the jury to determine whether they constituted breaches of the agreement in view of the conditions under which they were living, the age of the boy, the condition of his health, where he was taken, and the length of time he remained away. The court then drew attention to the letter written by defendant to the trustee which the court, evidently inadvertently, stated was written by the defendant to the plaintiff on the twenty-sixth of August, at a time when there was considerable feeling between the parties, saying that he had been advised by his attorney that she had breached the agreement and that he was no longer obligated thereby and would make no further payments. Attention was then drawn to the fact that thereafter and on the thirty-first of that month, plaintiff brought an action against the defendant to recover the sum of $100,000 on the ground that her consent to the separation agreement was obtained by the defendant through fraudulent statements and that the action was decided adversely to the plaintiff and affirmed on appeal, and to the fact that after that action was so decided, there were further negotiations between the parties, commencing in April, 1913, as a result of which defendant claimed that the plaintiff agreed that the separation agreement should be disregarded and that she would accept in place thereof a new agreement by which defendant was to pay her $100 per month and a certain amount for the youngest child, and that the defendant claimed that owing to the making of the new agreement he was under no further obligations under the original agreement. The jury were instructed to consider all of the evidence relating to the new agreement and that it was for them to determine what occurred between the parties with respect thereto. The court then

charged that there was no cancellation of the original separa-
tion agreement by what occurred at that time unless there
was a definite agreement to that effect; and that the plaintiff
claimed that the parties met on several occasions and came to
an agreement under which she was to receive $100 a month
and some provision was to be made for the youngest boy
while out of school and that she agreed to receive these
amounts at the time owing to the defendant's claim with
respect to his financial condition, but that there was no agree-
ment for the cancellation of the existing separation agreement,
and that the defendant claimed that in consideration of his
new agreement with respect to payments, plaintiff agreed to
waive any amount that had accumulated between September
1, 1911, and April 1, 1913, and that in determining this con-
troverted question of fact the jury should consider the letters
of the attorneys for the respective parties and the proposed
contract to which they relate. The correspondence to which
the court referred consisted of a letter from the defendant's
attorneys to the plaintiff's attorneys under date of March
30, 1914, stating that they inclosed therewith a draft of a
proposed agreement along the lines discussed between plain-
tiff's attorney and a representative of the attorneys for the
defendant. That agreement in substance provided for a
release of all claims and demands by the plaintiff against the
defendant for support, care and maintenance in consideration
of the payment by the defendant to the plaintiff of $3,000
as therein provided and his agreement to pay the plaintiff
$150 per month during her life or until she remarried, so long
as she complied with the provisions of that agreement, and
to pay her $50 per month for the support of the youngest child
until he attained the age of eighteen, during vacation periods
while he resided with her. There were no express provisions
annulling the original separation agreement or the provisions
of the Nevada decree with respect thereto. The attorneys for
the plaintiff, however, wrote the attorneys for the defendant
the next day, stating that their client was advised that she
had a valid, enforcible judgment for maintenance and support
and that she would not sign any agreement which might be
construed as releasing defendant from his liability under the
judgment and stating the things his client was willing to do,

which were, in effect, to accept $3,000, payments to be made as proposed by the defendant, in full for all accumulated alimony to date and $150 per month from April 1, 1914, and on receipt thereof would sign a receipt in full for that month's installment of alimony pursuant to the decree, and $50 per month for the support of the youngest child while with her, in lieu of any provisions made in the decree for the support and maintenance of the children. The record does not show any reply to this letter and it does not appear that there were any further negotiations between the attorneys and no agreement was signed. No part of the accrued alimony which the defendant was willing to pay and the plaintiff was willing to receive on the conditions stated was paid. Pending the appeal in the action brought by the plaintiff for the annulment of the separation agreement and in December, 1913, without any further agreement defendant commenced paying plaintiff $100 a month and he continued to pay her that amount down to the time of the trial. According to the testimony of the plaintiff, she endeavored to have an interview with the defendant prior to going to California on the 29th of April, 1914, but she had no interview with him after the correspondence between the attorneys until after her return from California. Defendant claims to have had an interview with her shortly before she went to California, at which it was agreed that he was to pay her $100 a month for life and $50 a month for the support of the youngest son when he was living and dwelling with her, and that in consideration thereof she was to release him from all liability for accrued alimony. In view of the position taken by the attorneys for the plaintiff, as evidenced by the letter of March thirtieth and of the fact that this action was at that time pending and that the defendant had offered to pay her $3,000 for a release from the accrued alimony and $150 per month for the future and $50 a month for the support of the youngest son while with her, it is perfectly clear that the jury were warranted in finding in favor of the plaintiff on the issue with respect to the making of a new agreement by which the defendant was released from the separation agreement or Nevada decree. The court instructed the jury that if they found that there was no breach of the separation agreement warranting the

defendant in repudiating all further liability thereunder as he did by the letter of August 26, 1911, then the plaintiff did not forfeit her rights under the separation agreement by bringing the action for the annulment thereof in which she was unsuccessful. To this instruction the defendant excepted and urges the exception on this appeal as a ground for reversal. The defendant, having repudiated the agreement, cannot complain that an action subsequently brought by the plaintiff in the assertion of her rights, as she believed them to exist, constituted a molestation or interference with him in violation of the provisions of the agreement, which he claimed had already been terminated and by which he refused further to be bound.

The court instructed the jury as matter of law that the defendant's letter of August 26, 1911, notifying her through the trustee that he would make no further payment under the contract, constituted a breach thereof on the part of the defendant, and warranted the commencement of any action to enforce any claim she was advised she had against him at that time. The letter was to the trustee and not to her but it was stipulated that it was transmitted to her by him by mail on or about its date. There was no request to have the charge corrected in regard to the letter having been sent to the trustee. At the close of the charge, defendant merely excepted to that instruction. It is now claimed that the court was not warranted in ruling as matter of law that this letter was intended as a repudiation of all liability under the contract by the defendant for the reason that no payment was then due from him under the contract and the next payment was not to fall due until September first thereafter. The attention of the court was not drawn to that point. In the second sentence thereafter, the jury were instructed that if they found " the contract, if breached, was breached by the defendant, then the plaintiff is entitled to recover a verdict at your hands," and then it was left to the jury to say whether or not the writing of that letter constituted a breach of the contract and notice to the plaintiff that the defendant would not " pay her any sum of money she was entitled to claim, any sum of money," and they were instructed that if so, she was then justified in taking the child out of the city on account

of the condition of the health of the child or for any reason and that would not be a breach of the contract on her part. Of course, if the writing of the letter was a violation of the contract for one purpose, it was for another, and thus it is seen that after stating as matter of law it was a violation, it was left to the jury to determine whether or not the writing of the letter of August 26, 1911, constituted a violation of the agreement and notice in effect to the plaintiff of a repudiation of the contract by the defendant. The only materiality of the instruction complained of in any event was with respect to whether the bringing of the action to annul the separation agreement was in violation of the plaintiff's contract not to molest the defendant. Regardless of whether the writing of the letter of August 26, 1911, was a violation of the contract, I am of opinion that the defendant by thus manifesting an intention to repudiate the agreement, cannot be heard to complain that the plaintiff, confronted by his threatened repudiation of the agreement, saw fit to bring an action for the annulment of it, in which she was unsuccessful; and in any event, on that theory, I think there was no prejudicial error in the instruction given. Other exceptions were taken to the charge and are presented in the points but we find no error with respect to them. It is finally claimed that the verdict is excessive. The points in this regard are with respect to the recovery of interest and allowances for the clothing and maintenance of the children but these items were submitted to the jury and are proper items on which the plaintiff, if entitled to recover, was entitled to interest, and no exception was taken thereto. The jury were instructed, in effect, that after the defendant sent the letter of August 26, 1911, repudiating the contract, plaintiff was justified in taking the youngest son out of the city for the benefit of his health without first obtaining the consent of the defendant or the trustee, and that if, as claimed by the defendant, plaintiff agreed in April, 1913, in consideration of his paying her $100 per month to discharge him from liability for the money due under the separation agreement, there could be no recovery, but if, on the other hand, plaintiff was not guilty of a breach of the contract and did not so agree, she was entitled to recover the amount unpaid under the separation agreement. The

plaintiff had taken the boy to New Jersey before the defendant wrote that letter, but the attention of the court was not drawn thereto and there was no request for the correction of the charge. The court submitted to the jury a summary of the plaintiff's calculation with respect to principal and interest. The jury rendered a verdict in favor of the plaintiff for $12,008.07, which is amply sustained by the evidence.

It follows that the judgment and order should be affirmed, with costs.

DOWLING, SMITH and MERRELL, JJ., concur.

GREENBAUM, J.:

I concur in the view that the separation agreement was merged in the decree; and I also concur in the opinion that the power to modify the provisions for alimony and support of the children is not retroactive and does not apply to accrued sums.

Judgment and order affirmed, with costs.