Fox Film Corporation, Appellant, *v.* Jack W. Springer et al., Doing Business under the Firm Name of Springer & Cocalis, Respondents.

Argued March 17, 1937; decided April 20, 1937.

*Louis Nizer* and *Robert S. Benjamin* for appellant.

*William D. Whitney, Bruce Bromley, Albert R. Connelly* and *John H. Morse* for respondents.

Lehman, J. The plaintiff corporation is engaged in business as a distributor of motion pictures. The defendants operate a circuit or chain of theatres. In 1934 the plaintiff entered into a written contract with the defendants whereby, among other things, the defendants agreed to display fifty-eight films released by the plaintiff for distribution and to pay for each picture a fixed license

fee. In addition the contract provided: " On six pictures allocated by Fox, Fox is to received [sic] 50% overage after the theatre has received as 50% profit what Fox receives as film rental. Expenses are to be on the basis of 1/10 week days, 2/10 Saturday, and 3/10 Sunday. These 6 pictures are to be played 3 or 4 days for week ends depending on the house policy." The plaintiff has brought an action to recover moneys alleged to be due from the defendants upon two pictures " allocated " by the plaintiff, pursuant to this clause of the contract. The complaint has been dismissed on the ground that the contract requires " accountings upon six pictures as one group," and consequently no recovery can be had in this action, based upon failure to pay " overage " on separate pictures.

The plaintiff admits that the fixed license fee on each picture, denominated in the complaint as the " minimum guaranteed license fee," has been paid. The defendants do not dispute that they have paid to the plaintiff no part of the profits or of the " overage " derived from the display of any of the pictures " allocated " by the plaintiff. The controversy between the parties is upon the narrow question of whether " overage " is to be calculated upon all six pictures as a group so that the amount due can be determined only by an accounting, upon which losses sustained in the display of one picture might be offset against profits derived from display of another, or whether the plaintiff is entitled to a share of the profits derived from the display of each picture as soon as the display of that picture is completed.

The contract between the parties consists, physically, of a printed form of the plaintiff company and typewritten clauses, in part inserted in the printed form and in part attached thereto. We have quoted in full the clause upon which the plaintiff's claim is based. Though the parties disagree as to whether under that clause " overage " is payable upon each separate picture or upon the six pictures regarded as a group, they agree

that the clause means that the defendants must pay to the plaintiff the excess of one-half of the gross receipts derived from exhibition of these pictures, either separately or as a group, after deducting the expenses of the production and one-half of the minimum guaranteed license fee upon those pictures. The parties who made the contract presumably understood the meaning of the words they used. In this clause and, indeed, throughout the contract in both its typewritten and its printed clauses, words and phrases are used which may be understood by those engaged in the business or art of motion picture production, distribution and exhibition, but which convey no meaning to those who are not initiated into the mysteries of the craft. We accept the meaning which the parties agree the words were intended to have. We are without guide in arriving at the construction of the words where there is disagreement between the parties as to the meaning they were intended to convey.

Terms in common use in a business or art may acquire a definite meaning understood by those who use them in connection with that business or art. In construing contracts the courts endeavor to arrive at the meaning intended by the parties. The courts endeavor to apply the definitions accepted by both parties though such definitions may be unknown to lexicographers. The parties may if they choose use their own special dictionaries, but when they ask the uninitiated to construe their contracts they must furnish them with the dictionaries they have used.

They have not done so in this case. We are told by the appellant that clauses in the printed form must be read with the typewritten " overage " clause and that when these clauses are read together the conclusion is inevitable that the parties intended that " overage " should be calculated and paid on each motion picture separately. We are told by the respondent that the printed clauses apply only to payments of the fixed license fees

and were never intended to refer to payments stipulated under the "overage" clause and that the construction placed upon that clause by the courts below is fair and equitable. The parties have used language understood, we must assume, by those cognizant of the special or technical meaning of words used in the profession or art of the parties. In that language we are illiterate. It may be that, after explanation of the meaning of the terms used throughout the contract, the contract would clearly show whether the parties intended that "overage" on each picture should be paid as soon as the display of that picture is completed, or intended that payment should await an accounting in regard to all six pictures. To find out that intent from the language used the court must place itself in the position of the parties when they made the contract. It must be informed of the meaning of the language as generally understood in that business, in the light of the customs and practices of the business. It must be made literate in a language in which it is now unschooled.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgments reversed, etc.