BERTHE E. KUNIHOLM, Appellant, *v.* BERTEL E. KUNIHOLM, Respondent.

First Department, December 14, 1961.

*Julius Garrell* (*Harry Merwin* with him on the brief), for appellant.

*Harry B. Albert* for respondent.

McNALLY, J. In an action to recover support payments provided for in a separation agreement, plaintiff wife appeals from an order denying her motion for partial summary judgment on her first cause of action.

The parties were married in 1934. The separation agreement was made May 3, 1957. The agreement provides for the support of the plaintiff and two of the three children of the parties, Joan born July 8, 1939, and Bruce born October 4, 1942. The pertinent portions of the agreement are as follows:

"3. The wife shall have the custody of Joan Harriet and Bruce Robellet, the infant issue of the marriage herein, and the husband shall have the right to visit with the said children at times to be agreed upon between the parties hereto.

"Aside from agreed upon visitation as aforesaid, the husband shall have the right to have the said children visit with him during Easter and Christmas vacations and two weeks in each Summer, and shall send for the children and return them to the custody of the wife, at his own cost and expense.

"4. * * * (g) If the aforesaid infants apply for and are accepted for academic courses in any college, in addition the husband will pay for their tuition, books, registration and other college fees and transportation, if college is out of town of residence, and nothing else, for the first four years at such college. If the said first four years extend beyond the twenty-first birthday of such children, the husband will continue the $120.00 monthly payments and also the aforesaid medical benefits for such children to the end of the fourth college year, it being distinctly understood that so long as such child or children continue at such college, the maintenance and support of such children thereat will continue to be paid by the husband, except if such children are accepted in a U. S. service academy

and will thereby be self-sustaining, no tuition or support shall be paid by the husband during such periods.

\* \* \*

"14. (a) The infant children shall not be removed permanently from the continental United States or farther West than the State of Ohio without the written consent of the husband."

Defendant husband alleges the plaintiff has breached the agreement in permanently removing Joan from continental United States on November 12, 1959, and in improperly persuading Bruce from attending West Point after he had been accepted. Defendant contends that the deprivation of a father's right of visitation (*Duryea* v. *Bliven,* 122 N. Y. 567) and plaintiff's unwarranted interference with Bruce's education (*Haskell* v. *Haskell,* 201 App. Div. 414, affd. 236 N. Y. 635) are defenses to the action on the contract herein. Plaintiff does not contend otherwise but vigorously asserts that defendant has failed factually to sustain said defenses.

On May 3, 1957, the date of the agreement, Joan was approximately 18 years of age. In the circumstances defendant argues that the term "permanently" contained in paragraph 14(a) of the agreement is a general one to be restricted to fit the circumstances of this case. (See *Madawick Contr. Co.* v. *Travelers Ins. Co.,* 307 N. Y. 111, 119.) Defendant also alleges that plaintiff and he are engaged in the same general employment, in the course of which, particularly with reference to applications for foreign service, the term means a period of two or more years.

Paragraph 14(a) of the agreement requires defendant's written consent in the event of permanent removal of the children from continental United States. On October 29, 1959 plaintiff requested defendant's "written permission for Joan to accompany me to Iran for two years". It is conceded that defendant did not furnish the requested written permission. Plaintiff's request for written permission substantiates defendant's claim that the removal of Joan from continental United States for the period of two or more years was within the contemplation of the contract a permanent removal. The parties were free to adopt their own terminology and if the meaning is furnished to the court, the contract containing such terminology will be construed in accordance with their intention. (*Fox Film Corp.* v. *Springer,* 273 N. Y. 434, 436; *Madawick Contr. Co.* v. *Travelers Ins. Co., supra.*) Whether or not Joan was removed permanently by the plaintiff within the meaning of the contract, the defendant, as urged by the plaintiff, orally

consented to the removal or waived compliance with paragraph 14(a) are questions of fact. (See *Van Horn* v. *Van Horn*, 196 App. Div. 472.)

Defendant alleges that five days after the making of the agreement plaintiff wrote to him stating that it was Bruce's desire to visit West Point; that Bruce's interest in West Point developed into a request for defendant's co-operation towards the end of preparing Bruce for admission to West Point. In February, 1959 Bruce came on to New York to reside with defendant who arranged for Bruce's admission to Trinity School. There Bruce prepared for the West Point entrance examinations which he passed in July, 1959. He was selected for admission to West Point on April 29, 1960. Between the taking of the examination and the time of his selection Bruce received several communications from plaintiff strongly advising him not to enter West Point and suggesting the advisability of other schools. Therein plaintiff stated, in substance, that it was defendant's obligation to pay for Bruce's college education and that Bruce should not be unduly concerned about the financial burden to defendant. Bruce's affidavit in support of plaintiff's motion alleges, in part, as follows:

" At first I submitted to my father's wishes, since, at first, mine were his, and, later, because I believed, as he told me, that I had no other choice. However, I discussed the matter of choice of college with my classmates, and with my headmaster, and I looked over various college catalogues. I also ascertained from my mother that under the separation agreement I could go to the college of my choice but that it was up to me to make my own choice. In view of my desire to study the humanities, and my ambition to become a novelist, possibly a college teacher, I decided that West Point was not the place to which I wanted to go, especially since I would be obligated to serve in the United States Army four additional years after graduation."

Plaintiff contends that her advice to Bruce was in the area of proper advice; defendant contends that plaintiff improperly persuaded Bruce not to enter West Point solely for the purpose of financially embarrassing him. The contract itself provides that defendant is not to be liable for collegiate expenses in the event that Bruce was accepted by a service institution, which he was. Acceptance, not attendance, is stated to be the test. In view of this, Bruce's preferences or his mother's intentions might be irrelevant. The contract itself provides an issue. In the circumstances it cannot be said that the defendant has failed to satisfy the court " that there is any basis for his

denial or any truth in his defense ''. (*Curry* v. *Mackenzie,* 239 N. Y. 267, 270.)

Summary judgment is concerned with '' [I]ssue-finding, rather than issue-determination ''. (*Esteve* v. *Abad,* 271 App. Div. 725, 727.) Here involved is a controversy which can only be resolved after a trial. (*Curry* v. *Mackenzie, supra,* p. 271.)

The order should be affirmed, with costs to defendant-respondent.

BASTOW, J. (dissenting). Plaintiff appeals from an order denying her motion for partial summary judgment on the first cause of action of the complaint to recover monthly installments of support payments for herself and her two children. The motion should have been granted.

The parties to the action, now divorced, entered into a separation agreement in May, 1957. Thereby custody of the two infant children — then 18 and 14 years of age, respectively — was given to the plaintiff wife.

Pertinent here are two provisions of the agreement. The first was that the children should not be removed '' permanently from the continental United States * * * without the written consent of the husband.'' Secondly, the latter agreed to pay $120 monthly for the benefit of each child until each reached 21 years or married and necessary medical and hospital expenses. In addition the husband promised to pay tuition and certain other expenses for the first four years '' [I]f the aforesaid infants apply for and are accepted for academic courses in any college ''. Upon the infant reaching 21 during the four-year period the obligation was reduced to the payment of the monthly benefit and medical benefit to the end of the fourth college year '' except if such children are accepted in a U. S. service academy and will thereby be self-sustaining, no tuition or support shall be paid by the husband during such periods.''

The defendant admits nonpayment of moneys due under the agreement but contends triable issues are presented in that the wife breached the agreement (1) by removing the daughter from this country to Iran without his consent; (2) by depriving him of specific visitation rights by said removal; and (3) by interfering with the education of their son by persuading him to attend Dartmouth College after he had been accepted at West Point.

There is no substance to the first two alleged breaches of the agreement. In November, 1959, some eight months before the daughter reached the age of 21, the wife was assigned by

her employer for a two-year tour of duty in Iran. Months before she wrote defendant asking his permission to have the daughter accompany her. The letters were ignored. The daughter submits an affidavit from which it appears that shortly before sailing she visited her father and he made no objection to her going. It is apparent that in the light of defendant's conduct his present contentions are mere after-thoughts submitted to avoid making any support payments. Respondent's contention that the word " permanently " as used in the agreement as to removal of the children might be found to mean " temporarily " is equally fallacious. There was no permanent removal of the daughter who was approaching her 21st birthday and in any event respondent by his course of conduct should be estopped from asserting his sham defenses on this issue.

It appears that the son, while residing temporarily with the father, made application to be admitted to the United States Military Academy, United States Naval Academy, Brown, Trinity, Williams and Dartmouth Colleges. He was subsequently notified by West Point, Brown, Trinity and Dartmouth that he would be admitted for the term beginning in September, 1960. The son decided to enter Dartmouth whereupon, according to his affidavit, which is undenied, the father ordered him to leave his house in the near future, never to return, and that he should consider himself " disinherited ".

The respondent contends that he has no further financial obligations under the agreement because (1) the son was " accepted " by the Military Academy and (2) the wife " interfered " with the son's application for and acceptance at the academy. As to the latter ground, reliance is placed upon two letters written by the mother to the son while he was residing with the father. These present no triable issue on the theory of interference or breach of the agreement. In substance the mother, who had been given custody of the child, advised him in writing, and correctly, of his legal rights under the terms of the agreement.

The lack of substance to this defense is demonstrated by respondent's reliance upon *Haskell* v. *Haskell* (201 App. Div. 414). Therein it appeared that the separation agreement provided (p. 414) that the child should be " supported, educated and maintained by and under the sole direction " of the husband. It was held that the latter was not liable for necessaries furnished the son where it was proved that the mother upheld the son in disobeying the father by refusing to attend school. It is apparent herein that the respondent was determined that his son should enter West Point because thereby he would be relieved

of the financial obligation of making any payments for support, tuition or other college expenses. Thus, in his affidavit he complains that Dartmouth "was far beyond anything that I could afford" and "was the most expensive school in the Ivy League."

There is no triable issue presented. Indeed, upon a trial if no additional proof is submitted a directed verdict in favor of the wife would be required because by no rational process could the triers of the fact find a verdict in favor of the husband.

Equally unsound is respondent's attempt to construe the agreement to mean that the son's "acceptance" at West Point, without his subsequent attendance thereat, absolves him from his obligation to pay college education expenses at Dartmouth. A reading of the entire provision will permit of no such construction. The agreement was made when the son was 14 years of age. It could not have been the intent of the parties that the son as he approached college age should have no choice in the selection of an institution. His affidavit shows that after careful consideration he rejected West Point and decided because of his desire "to study the humanities, and my ambition to become a novelist, possibly a college teacher" to enter a liberal arts college. The defendant, in the meantime, pursued an unaltered course that would terminate his obligations to pay any expenses for a college education. This is best shown by the allegation in his answer that he "obtained for [the son] a Congressional appointment to West Point, which is a U. S. Service Academy."

Respondent has failed to show a triable issue upon any phase of the first cause of action. The order should be reversed and the motion granted.

STEVENS and STEUER, JJ., concur with MCNALLY, J. P.; BASTOW, J., dissents and votes to reverse in opinion, in which EAGER, J., concurs.

Order entered on June 19, 1961, denying plaintiff's motion for partial summary judgment, affirmed with $20 costs and disbursements to the respondent.