**YAFA JEWELRY INC., Plaintiff,**

v.

**ALL THOSE UNDERWRITERS SUBSCRIBING TO POLICY OF INSURANCE NUMBERED 96FA0026180A, also identified as cover number 95FA0023120A, including Axa Global Risks (UK) Limited, Indemnity Ma-**

rine Insurance Company Limited, Zurich Re (UK) Limited, Wurttembergische Versicherung AG, Phoenix Assurance PLC, Threadneedle Insurance Company PLC, Ocean Marine Company Limited, Assicurazioni Generali SpA, Terra Nova Insurance Company Limited, and Skandia Marine Insurance Company (UK) Limited, Defendants.

No. 98 Civ. 0028(MBM).

United States District Court,
S.D. New York.

March 24, 1999.

Seth L. Rosenberg, Clayman & Rosenberg, New York City, for plaintiff.

Edward S. Benson, White, Fleischner & Fino, New York City, for defendants.

**OPINION AND ORDER**

MUKASEY, District Judge.

Yafa Jewelry Inc. ("Yafa Jewelry") sues several underwriters for breach of contract arising out of the underwriters' refusal to pay benefits allegedly due on a contract of insurance. Pursuant to Fed.R.Civ.P. 56, both parties move for summary judgment. For the reasons stated below, plaintiff's motion is granted, and defendants' motion is denied.

I.

The following relevant facts are undisputed. Plaintiff Yafa Jewelry, a New York corporation, sells precious gems and jewelry at wholesale. (Joint Local Rule 56.1 Statement ¶ 1) On August 9, 1996, plaintiff purchased an insurance policy (the "Poli-

cy") underwritten by defendants to cover its participation in two trade shows, in Hong Kong and Las Vegas, respectively. (*Id.* ¶ 2) Thereafter, the policy was extended to cover plaintiff's participation in the Basel Jewelry Fair between April 7 and April 21, 1997. (*Id.*)

Pursuant to the Policy, plaintiff was insured by defendants for losses of up to $2 million at the Basel show. (*Id.* ¶ 3) The Policy, however, contained three warranties applicable specifically to trade shows:

**Exhibition Clause**

1. It is warranted that a minimum of one person shall be in attendance of the insured interest at all times during Show hours.

2. It is warranted that the insured interest is displayed in locked showcases other than when being shown.

3. It is warranted that the insured interest is kept in a locked safe and/or vault and/or safe deposit vault and/or bank vault and/or guarded security room at all times when not being displayed and not in the custody of the Assured and/or the Assured's employees and/or agents.

(*Id.; see id.* Ex. A at 3) [1]

Maurice Moradof, plaintiff's manager and principal, arrived in Basel on April 8, 1997, set up plaintiff's booth on April 9, 1997 and began exhibiting merchandise on April 10, 1997. (*Id.* ¶ 5) The booth—which plaintiff shared with D.H. Edmunds and Bijan, two other merchants—was a small makeshift office, constructed of temporary walls with a sliding rear door and an open entrance at the front. (*Id.* ¶¶ 5–6; *see id.* Ex. B (diagram)) Inside the booth were two tables with chairs and a free-standing display cabinet. Another display cabinet (the "Display Cabinet"), *standing seven feet tall, served as the front wall and show window, providing passersby the opportu-*

nity to view plaintiff's merchandise. (*Id.* ¶ 6) The rear of the Display Cabinet had locking panels which could be opened from inside the booth. (*Id.*)

On April 13, 1997, shortly before 2 p.m., Moradof and the employees of Bijan and D.H. Edmunds were in the booth attending to customers. (*Id.* ¶ 7) Moradof was seated at a table three to four feet behind the Display Cabinet, with his back to the Display Cabinet, assisting three customers who had asked to see plaintiff's entire line of merchandise. (*Id.*) Plaintiff's entire line of merchandise was kept in the Display Cabinet and consisted of approximately 150 items. (*Id.*)

Instead of taking all the merchandise out of the Display Cabinet at once, Moradof removed three items at a time and placed them on the table before the customers. (*Id.* ¶ 8) After the three customers had made their decisions with respect to the items on the table, Moradof "would lean back and return the items to the display case and remove new items to replace those being returned." (*Id.*) During the time that Moradof was showing the merchandise, the Display Cabinet was left unlocked. (*Id.*)

As Moradof was showing the merchandise to his three customers in the described manner, he heard a shout from the entranceway of the booth. (*Id.* ¶ 9) Upon investigation, he observed a man whom he knew to be Gaetano Scarselli restraining a young man. (*Id.*) Scarselli informed Moradof that he had seen the man inside the booth reaching into the Display Cabinet and grabbing several items. (*Id.*) Scarselli and Moradof were able to restrain the thief, but not before he passed several items to an accomplice who was able to escape. (*Id.*)

On April 14, 1997, the day after the theft, plaintiff notified defendants of the

---

1. At the time defendants agreed to extend coverage under the Policy to the Basel show, the parties amended Exhibition Clause One to require that a minimum of two persons rather than one be in attendance of the insured interest at all times. (Joint Local Rule 56.1 Statement ¶ 3)

loss of three items of jewelry, worth approximately $251,460, and submitted a claim under the Policy. (*Id.* ¶ 10; *see* Compl. ¶ 23) After adjusters conducted two investigations of the claim on behalf of defendants, defendants' agent notified plaintiff by letter dated August 6, 1997 that defendants were disclaiming coverage of the claim for failure to comply with Exhibition Clauses Two and Three, quoted above. (Joint Local Rule 56.1 Statement ¶¶ 10–11; *see id.* Ex. E) Thereafter, plaintiff filed this action.

## II.

Summary judgment is mandated when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a summary judgment motion, "the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir.1994). Nevertheless, Rule 56 jurisprudence is clear in "provid[ing] that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party, therefore, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Conclusory allegations will not suffice to create a genuine issue." *Delaware & Hudson*

*Ry. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir.1990).

## III.

Because neither party challenges the validity of the Policy, and the relevant facts are undisputed, the sole issue to be decided is whether Moradof, plaintiff's agent, violated Exhibition Clause Two of the Policy by leaving the Display Cabinet unlocked at the time of the theft and, if so, whether such violation relieves defendants of their obligation to pay.[2] Plaintiff contends that the items stolen from the Display Cabinet were "being shown" within the meaning of Exhibition Clause Two—and therefore need not have been in a locked showcase—because the three customers had asked to see plaintiff's entire line and were "being shown" that line item by item.[3] (*See* Pl. Mem. at 5) Defendants counter that, insofar as the stolen items were still in the Display Cabinet and not actually presented to the three customers, such items were being "displayed" and not "shown"—and therefore should have been in a locked showcase. (*See* Def.Mem. at 7–10) Defendants point also to Exhibition Clause Three, asserting that when the two clauses are read together, they "logically require consideration of the merchandise as separate units" such that the merchandise that was left in the Display Cabinet should be deemed to have been on display even if other merchandise was "being shown." (Def.Mem. at 8)

■■ Under New York law, which applies here, "the initial interpretation of a contract 'is a matter of law for the court to decide.'" *K. Bell & Assoc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir.1996) (quoting *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 299 (2d Cir.1996)). In-

2. Although defendants referred to both Exhibition Clauses Two and Three in their August 6, 1997 letter disclaiming coverage, they now rely exclusively on Exhibition Clause Two.

3. Plaintiff argues, in the alternative, that the stolen items were "being shown" insofar as they were set out for sale or placed in a *"show* case" so as to be seen. (*See* Pl.Mem. at 4) This argument is plainly without merit, as it conflates the meanings of "display" and "show" in Exhibition Clause Two, rendering that clause nonsensical.

cluded in this initial interpretation is "the threshold question of whether the terms of the contract are ambiguous." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir.1998). Contract terms are ambiguous if "they are 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir.1996)); *see Gallien v. Connecticut Gen. Life Ins. Co.*, 49 F.3d 878, 882–83 (2d Cir.1995) (stating that an insurance policy is unambiguous "if 'the words in the paragraphs of the policy under examination have a definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion'" (quoting *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280 (1978))). A contract, however, is not ambiguous "merely because the parties urge different interpretations in the litigation. The court is not required to find the language ambiguous where the interpretation urged by one party would 'strain[ ] the contract language beyond its reasonable and ordinary meaning.'" *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir.1989) (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 93, 141 N.E.2d 590 (1957)) (alteration in original).

■ In the present case, the only reasonable interpretation of the words "being shown" in Exhibition Clause Two encompasses Moradof's actions at the time of the theft. Plaintiff's jewelry was "being shown" at the time of the theft insofar as Moradof was in the process of continuously presenting items from plaintiff's line of merchandise to three customers. That Moradof chose to present the items *seriatim* rather than *en masse* does not, by itself, prove otherwise.

Although superficially appealing, defendant's interpretation of "being shown" to refer only to those items laid before a customer outside a showcase is unreasonably restrictive. On defendant's view, for example, had Moradof been accosted as he was removing an item from the showcase, and other items been snatched from the case, such loss would not have been covered by the insurance policy because the lost items would have been "on display" in an unlocked case. The Policy, however, appears to have been designed to protect against just such a form of risk.

Moreover, defendants' interpretation conflicts with the "customs, practices, usages and terminology as generally understood" in the wholesale jewelry and insurance businesses. *Lightfoot*, 110 F.3d at 906. Wholesale jewelers exhibiting goods at a trade show are frequently called upon by customers to show large quantities of merchandise in short periods of time. (*See* Moradof Aff. ¶¶ 2, 4; Holton Decl. ¶ 5; Yick Decl. ¶ 3; Elihu Decl. ¶ 2) To accommodate such demands and maintain a reasonable balance between security and efficiency, wholesale jewelers customarily remove a few items at a time from their showcases, present them to the potential customers and replace and remove items as necessary—all the while leaving their showcases unlocked for ease of access. (*See* Moradof Aff. ¶¶ 5–6; Holton Decl. ¶¶ 5–6; Yick Decl. ¶¶ 3–4; Elihu Decl. ¶¶ 2–4)

Given this industry practice, it would be commercially unreasonable to interpret Exhibition Clause Two in a way that rendered Moradof's actions a bar to coverage. *Cf. Fox Film Corp. v. Springer*, 273 N.Y. 434, 436–37, 8 N.E.2d 23 (1937) (emphasizing that a court must interpret a contract in its commercial context, "informed of the meaning of the language as generally understood in that business, in

**312**

the light of the customs and practices of the business"). Indeed, if defendants' interpretation of Exhibition Clause Two were correct, jewelers like plaintiff would be presented with a Hobson's Choice: they could either remove their full line of merchandise from the showcase at once—thereby exposing themselves, and their insurer, to risk of significant theft—or lock and unlock their showcases each time they removed and replaced items—thereby greatly lengthening the amount of time it would take to serve each customer and reducing the number of customers they could serve at each show. If that is the choice that defendants intended to impose on plaintiff through the Policy, they could have drafted the Policy to make that unmistakably clear. *Cf. Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 697–98 (2d Cir.1998) (discussing the *contra preferentem* rule whereby, " 'when the meaning [of an insurance policy] is doubtful, it should be construed most favorably to the insured who had nothing to do with the preparation thereof' ") (quoting *Matthews v. American Cent. Ins. Co.*, 154 N.Y. 449, 456–57, 48 N.E. 751 (1897)).

To be sure, there is some risk posed by the practice of leaving a showcase unlocked while merchandise is being shown. But in this instance at least, the jeweler remained close to the showcase in order to remove and replace the merchandise, so such risk was minimal. This is not a case, in other words, where the meaning of "being shown" is strained to include items left unlocked and unguarded in contravention of good sense and industry practice. Indeed, it is to protect against just this sort of minimal risk that a party purchases insurance.

In short, the merchandise stolen from plaintiff was "being shown" within the meaning of Exhibition Clause Two and, therefore, plaintiff did not violate that

clause. Accordingly, defendants were at no point relieved of their obligation to pay under the Policy.[4]

\* \* \* \* \* \*

For the foregoing reasons, plaintiff's motion for summary judgment is granted, and defendants' motion is denied. Settle judgment on ten days' notice.

---

4. Given my conclusion that plaintiff did not violate any of the Exhibition Clauses, the parties' remaining arguments—having to do with whether the Exhibition Clauses are warranties or exclusionary clauses and the consequences to plaintiff of noncompliance—are moot.