Abraham J. Gellinoff, J.
Is a "Burger King” fast food restaurant a "cafeteria”? The answer to that query determines this motion and cross motion for summary judgment in an action for a declaratory judgment.
Plaintiff Horn & Hardart leases space in the "Lorillard Building”, 200 East 42nd Street, Manhattan, in which it currently operates an automat. Plaintiff has become a franchisee of Burger King Corporation, and seeks to convert the automat to a "Burger King” fast food restaurant. In order to do so, plaintiff will be required to make certain physical alterations in the premises. And, pursuant to its lease with defendants — the owners of the building — plaintiff must obtain permission, which the landlord must not "unreasonably withhold”, to make such alterations. Defendants, however, have withheld permission, on the ground that the proposed use of the premises is not permissible under the lease.
The pertinent section of the lease, executed in 1957, section 4, provides that: "The Tenant shall use the leased premises *629 only for one or more of the following purposes: a service restaurant, Automat restaurant, cafeteria, counter and stool restaurant, retail shop for the sale of baked goods and other items usually sold in Horn & Hardart retail stores or for any one or more of said purposes, whichever Tenant may desire, it being understood that the Tenant shall have the right to change the operations conducted by it in the premises from time to time in the Tenant’s discretion, provided that at all times Tenant shall use the premises only for one or more of the purposes above specified.”
It is uncontested that a "Burger King” restaurant is not a "service restaurant”, an "Automat restaurant”, a "counter and stool restaurant” or a "retail shop.” Plaintiff contends, however, that a fast food restaurant of the type contemplated falls within the general category of "cafeteria”, and that the proposed use of the premises is thus permitted by the lease.
However, notwithstanding the currently popular "Burger King” advertising jingle, plaintiff may not have it its way.
The parties were deliberate in their choice of words in drafting section 4 of the lease. Elsewhere in the same lease agreement, which covered more than one location, the parties provided that, at another location, plaintiff could operate "a cafeteria, service restaurant, counter and stool type of restaurant or other type of restaurant such as the Tenant may from time to time desire.” The reason for the careful choice of words with regard to the instant location, as one defendant avers in an undisputed allegation, was that the Lorillard Building would attract "high quality commercial tenants,” and that defendants sought a restaurant which could appeal to the personnel employed within the building on a daily basis, during normal business hours.
Therefore, rather than permitting plaintiff a free hand in determining what kind of restaurant to maintain, the lease specifically limited the choices in a manner consistent with defendants’ intentions. And in that context, as well as in consideration of the ordinary meaning of the word, the parties’ conception of the word "cafeteria” becomes apparent.
"Cafeteria” denotes a full menu restaurant, directed mainly toward customers eating at tables provided in the restaurant. Indeed, the only major difference between a cafeteria and a service restaurant is the manner of obtaining food. At a cafeteria, rather than being served at. tables, customers obtain their food at a centralized area, and themselves bring it to *630 their tables. In 1957, when this lease was executed, the cafeteria was a well-known institution, and the parties certainly understood its nature.
A "Burger King” fast food restaurant is wholly different from a cafeteria. It is a limited menu restaurant — its main course offerings being limited to various forms of hamburger or fried fish sandwich — catering substantially to customers who take their food out rather than eat at the restaurant. A traditional cafeteria serves a full meal — and in a business district is ordinarily open both for breakfast and lunch — on nondisposable ceramic dishes with metal utensils. A "Burger King” restaurant, on the other hand, does not provide a full meal; a customer cannot obtain appetizers, vegetables, salads, beverages other than soda or malteds, or, with the exception of a packaged fruit pie portion, desserts. Moreover, the "Burger King” franchise mandates that the restaurant be open from 11:00 a.m. to 11:00 p.m., thereby precluding the serving of breakfast. Additionally, in keeping with its emphasis on take-out service, a "Burger King” restaurant serves its food on paper plates, with plastic utensils.
In sum, defendants desired that plaintiff maintain a restaurant in this commercial building which could serve the daily needs of the employees within the building, as well as of transients. The lease reflects that desire. The proposed "Burger King” restaurant does not meet the contemplated use, and, therefore, it does not comply with the lease.
Accordingly, plaintiff’s motion is denied; defendants’ cross motion is granted.