■ HORN & HARDART COMPANY, Appellant, v JUNIOR BUILDING, INC., et al., Respondents.—Order and judgment (one paper), Supreme Court, New York County, entered March 31, 1975, modified, on the law, to deny defendants-respondents' motion for summary judgment, and otherwise affirmed, without costs. The action is for declaratory judgment that defendant landlord is unreasonably withholding consent to plaintiff-appellant's proposed use of the demised premises as a Burger King restaurant. The court below granted the landlord summary judgment dismissing the complaint and denied the tenant's motion for summary judgment granting the declaration. We modify to the extent of denying the landlord's motion while sustaining denial of that by the tenant. It is true that the papers in opposition to the motion do not dispute the landlord's statement of interest in the character of restaurant operated on its premises. But the contract of lease states that the tenant may operate a cafeteria on the premises.

"Cafeteria 1. A self-service restaurant or lunchroom." (Webster's Third New International Dictionary [Merriam].) The landlord says the minds of the parties did not intend at the time of contract that the word should include plaintiff's type of "fast food" operation. How could they have had any thought at all on the subject? The Burger King type of operation did not exist at that time. While fast food restaurants of certain types (e.g., "coffee pots") no doubt existed, who can say as a matter of unquestioned fact what the parties then had in mind as to the operation here considered. An issue is thus raised by the very point argued by the landlord. Both motions for summary judgment are properly denied. Concur—Markewich, J. P., Lupiano and Lane, JJ.; Tilzer and Lynch, JJ., dissent in the following memorandum by Lynch, J.: Lynch J. (dissenting). We dissent and would affirm the order and judgment of Gellinoff, J., denying plaintiff's motion for summary judgment and granting defendants' motion for summary judgment. Article Fourth of the lease between the tenant plaintiff and the landlord defendants provides that "The Tenant shall use the leased premises only for one or more of the following purposes: a service restaurant, Automat restaurant, cafeteria, counter and stool restaurant, retail shop for the sale of baked goods and other items usually sold in Horn & Hardart retail stores or for any one or more of said purposes". Article Third limits the tenant in competing areas and prohibits its having nearby "a cafeteria, service restaurant, counter and stool type restaurant or other type of restaurant such as the Tenant may from time to time desire". The tenant has operated an Automat in these premises, a large office building, since 1958. In an effort to change its use to a Burger King restaurant, the tenant contends that the proposed use is permissible under the lease as a "cafeteria". It relies upon the dictionary definition of the word, "a restaurant in which the customers serve themselves or are served or are served at a counter and take food to tables". We must, however, accept the definition as it was understood by the parties "though such definitions may be unknown to lexicographers" (Fox Film Corp. v Springer, 273 NY 434, 436). A reading of the lease makes it clear that the dictionary meaning of "cafeteria" cannot have been intended. Since that definition covers all types of restaurant operations possible except service restaurants, its use would render "Automat restaurant" and "counter and stool restaurant" in article Fourth meaningless surplusage. More strikingly, the use of the dictionary definition would make nonsense of the words "counter and stool type restaurant or other type of restaurant" found in article Third. This runs counter to the principle that requires us to give meaning, if reasonably possible, to every word that the parties have used in their lease (Meighan v Finn, 146 F2d 594, affd 325 US 300). The evidence of the intention of the parties placed before the Special Term was uncontroverted. It is contained in the affidavit of the president of the defendant who was personally involved in the original lease negotiations. "The presence of a Horn & Hardart Automat cafeteria in the Lorillard Building was important because many substantial commercial tenants regarded the accessibility of appropriate eating facilities for their employees as an important factor in deciding whether to take occupancy." There was a "mutual understanding of the parties that Horn & Hardart's operations were to be limited to certain kinds of 'dignified' eating places". "The reason for the limitations in paragraph FOURTH of the Agreement of Lease was the desire of all concerned, particularly defendants, to ensure that the leased premises would be used for an eating establishment consistent with the quality of the building then being constructed by defendants. Limited menu fast food restaurants were well known in 1957 and this was not the kind of restau-

rant we wanted for the Lorillard Building." With the dictionary definition of "cafeteria" being inapplicable and the intention of the parties uncontroverted and, since the character of the proposed Burger King operation has never been in dispute, there are no issues of fact. The Special Term's conclusion from the undisputed evidence that a Burger King restaurant would be hostile to the intention of the lease should be affirmed. [81 Misc 2d 628.]