DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

MONICA SUE MORGAN,

Appellant,

v.

RICHARD THOMAS MORGAN,

Appellee.

_____

No. 2D2024-2115
_____

January 7, 2026

Appeal from the Circuit Court for Pinellas County; Christopher M. LaBruzzo, Judge.

Jonathan E. Hackworth of Hackworth Law, P.A., Tampa, for Appellant.

No appearance for Appellee.

SILBERMAN, Judge.

Monica Sue Morgan, the Former Wife, appeals an Amended Final Judgment of Dissolution of Marriage Resolving Issues on Remand. The final judgment dissolving the parties' marriage was entered on April 17, 2020, and Richard Thomas Morgan, the Former Husband, appealed that judgment. In *Morgan v. Morgan*, 327 So. 3d 898, 899 (Fla. 2d DCA 2021), this court reversed those portions of the final judgment involving equitable distribution, alimony, and retroactive child support. On

remand, the trial court entered the amended final judgment that established a new equitable distribution schedule, awarded the Former Wife retroactive child support, and awarded the Former Husband permanent periodic alimony and retroactive alimony.

The Former Wife now appeals the amended judgment, challenging the award of permanent alimony, the equitable distribution analysis, and the calculation of retroactive child support. We agree with the Former Wife that the trial court erred in awarding permanent alimony and determining the valuation date of the parties' assets and remand for reconsideration. Although we do not find merit in her argument pertaining to retroactive child support, in light of our decision on permanent alimony and the asset valuation date, we also remand the award of retroactive child support for reconsideration.

## I. PERMANENT ALIMONY

In the amended final judgment, the trial court awarded the Former Husband $4,182 per month in permanent periodic alimony. The Former Wife argues that the award of alimony was improper for three reasons. First, the Former Wife argues that the elimination of permanent alimony from section 61.08, Florida Statutes (2023), requires reversal of the award.[1] Second, she contends that the court erred in establishing the Former Husband's need for alimony. Third, the Former Wife argues that her ability to pay was erroneously calculated because the trial court considered her bonus pay which was not a regular occurrence. Because

---

[1] Although the Former Husband has not appeared in this appeal, we note that he incorrectly argued to the trial court that this court's earlier opinion remanded solely for reconsideration of the amount of the award and that the trial court could not reconsider the type of alimony that could be awarded. He also argued that the statutory change was not applicable to this case because the original final judgment awarded permanent alimony. As explained in this opinion, that argument fails.

2

the trial court's award of permanent alimony was improper pursuant to section 61.08, we reverse.

The legislature significantly amended Florida's alimony statute, section 61.08, effective July 1, 2023, eliminating awards of permanent alimony. *See* ch. 2023-315, § 1, Laws of Fla. The amended statute restricts alimony to temporary, rehabilitative, bridge-the-gap, or durational alimony. § 61.08(1)(a). Section 61.08(11) directs courts to "apply this section to all initial petitions for dissolution of marriage or support unconnected with dissolution of marriage pending or filed on or after July 1, 2023." Because the application of the amended statute is a question of law, this court reviews the issue using the de novo standard of review. *See Woodward v. Woodward*, 400 So. 3d 861, 863 (Fla. 2d DCA 2025).

In *Woodward*, this court addressed the application of section 61.08(11). *Id.* There, the final judgment of dissolution of marriage awarding the former husband permanent alimony was entered in February 2023, and the former wife timely appealed the judgment. *Id.* This court held that the amended version of section 61.08 applied because the initial petition for dissolution was still pending at the time of the appeal. *Id.* at 864. As the court noted, "[t]he general rule is that an action remains pending in the trial court until after a final judgment and such time as an appeal is taken or time for an appeal expires. If an appeal is taken, the action is still pending until final disposition." *Id.* at 863 (quoting *Wilson v. Clark*, 414 So. 2d 526, 530 (Fla. 1st DCA 1982)).

In the present case, the initial petition for dissolution of marriage was pending before the trial court after this court reversed and remanded the original final judgment. *Morgan*, 327 So. 3d at 901. The alimony award in the original judgment was reversed, and the trial court was

3

directed to reconsider the alimony award on remand. *Id.* In doing so, the trial court was necessarily required to follow the provisions set forth in section 61.08, which by its terms applies to initial petitions that remain pending.

We recognize that the Fourth District has taken a more restrictive approach, holding that a petition for dissolution of marriage remains pending until the trial court enters a final judgment of dissolution. In *Alfonso v. Alfonso*, 50 Fla. L. Weekly D1043, D1043 (Fla. 4th DCA May 7, 2025), the trial court entered a final judgment on June 30, 2023, the day before the new version of section 61.08 became effective. The former husband then filed a motion for rehearing and motion for new trial on July 14, 2023, arguing that permanent alimony was improper under the amended version of section 61.08. *Id.* He asserted that the petition for dissolution remained pending because the time for rehearing had not expired when the law went into effect. *Id.* The Fourth District disagreed, reasoning that the "final judgment disposed of all issues in the initial dissolution petition," and therefore, the dissolution petition was no longer pending on July 1, 2023. *Id.* at D1044. In arriving at its holding, the court looked to "the Florida Senate Bill Analysis and Fiscal Impact Statement relating to the amendment stat[ing] that the changes to alimony are 'applicable to any final judgment *entered* on or after July 1, 2023.' " *Id.* (quoting Fla. S. Comm. on Rules, CS/SB 1416 (2023) Staff Analysis (April 4, 2023)).

We disagree with the Fourth District's approach because the language of section 61.08(11) is clear and unambiguous. *See Westpark Pres. Homeowners Ass'n v. Pulte Home Corp.*, 365 So. 3d 391, 395 (Fla. 2d DCA 2023) ("If the statutory language is clear and unambiguous, the court must recognize the statute's plain meaning and, therefore, need

4

not employ any other rules of statutory construction." (quoting *State v. Lewars*, 259 So. 3d 793, 797 (Fla. 2018))). Section 61.08(11) clearly states that a "court shall apply this section to all initial petitions for dissolution of marriage . . . pending or filed on or after July 1, 2023." Further, we note that in *Alfonso*, all aspects of the final judgment were affirmed on appeal except for the provision regarding life insurance. 50 Fla. L. Weekly at D1044. Here, unlike in *Alfonso*, the award of alimony was reversed on appeal and remanded for reconsideration. In the present case, we conclude that the petition for dissolution and related alimony issue remain pending on remand.

We also recognize that the First and Fifth Districts have held that a petition for dissolution of marriage remains pending until the trial court enters a final judgment of dissolution. However, the holdings in those courts were based on different facts than we have here. In *Stockdale v. Stockdale*, 409 So. 3d 163, 167 (Fla. 1st DCA 2025), the court held that the petition for dissolution of marriage remained pending where, although a general magistrate had conducted a hearing on the petition, the magistrate had not submitted a recommended order, and the trial court had not entered a final judgment. In so holding, the court rejected the former wife's argument that her substantive right to permanent alimony had vested at the hearing before the magistrate. *Id.* at 168. The court noted that a trial court cannot "apply a statute retroactively if the statute impairs vested rights, creates new obligations, or imposes new penalties." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 61 (Fla. 1995)). But the court found that the former wife did not have a vested right in alimony:

> The right to alimony becomes vested only when a final judgment is "rendered for alimony and is made payable in future installments." *Montell v. Montell*, 46 So. 2d 715, 716

5

(Fla. 1950) (quoting *Sistare v. Sistare*, 218 U.S. 1, 30, 30 S. Ct. 682, 54 L. Ed. 905 (1910)). And even then, Florida courts may modify or terminate future alimony payments because a former spouse has no absolute right to those future payments. *See* § 61.14, Fla. Stat. (allowing for the modification or termination of alimony); *Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980) (explaining that permanent alimony terminates "upon the death of either spouse or the remarriage of the receiving spouse" and is "subject to modification upon a substantial change of circumstances").

*Id.* at 169.

In *Secrist v. Secrist,* 421 So. 3d 781, 784 (Fla. 5th DCA 2025), the court was asked to decide whether a petition for dissolution remained pending where the trial court had orally pronounced its findings and rulings but had not yet entered a written final judgment. The court concluded that the petition remained pending until the trial court entered the written final judgment and agreed with the *Stockdale* court that a spouse has no vested right to alimony until the judgment is entered. *Id.* at 785-86.

Here, the Former Husband had no vested right to alimony because the original award of alimony was reversed and the trial court was required to reconsider alimony on remand. Thus, the trial court should have applied the new version of section 61.08, which became effective over a year before the filing of the Amended Final Judgment of Dissolution of Marriage Resolving Issues on Remand. Accordingly, we reverse the alimony award and remand for the trial court to reconsider any such award under the amended statute.

Because they may impact the proceedings on remand, we briefly address the remaining alimony issues raised by the Former Wife.

The Former Wife argues that the trial court erred when assessing the Former Husband's need for alimony and establishing an award of

6

$4,182 per month. She contends that the trial court erred in failing to consider its initial findings that the Former Husband understated his income and overstated his expenses. The Former Wife's argument is not supported by the record. In the original final judgment, the trial court found that the Former Husband's gross monthly salary was $4,333.33 and his net monthly salary was $3,287. The trial court made the same findings as to the Former Husband's income in the amended final judgment. Further, the Former Wife does not point to any error the trial court made in calculating the Former Husband's income or expenses.

Next, she argues the trial court incorrectly weighed the standard of living factor in section 61.08. We do not find merit in this argument because in this court's opinion reversing the alimony award, this court held that the trial court improperly gave the Former Husband a nominal amount of alimony "[g]iven the standard of living established during the marriage and the disparity between the parties' incomes." *Morgan*, 327 So. 3d at 900. This court reversed the alimony award because it was not commensurate with the parties' marital standard of living. *Id.* Therefore, the trial court did not err on remand when it considered the parties' standard of living in determining alimony.

The Former Wife also argues that the trial court erroneously included the yearly bonus she receives from work when determining her ability to pay. We disagree. As this court has noted, a party's bonus income must be included when calculating alimony "when it is regular and continuous." *Barlow v. Barlow*, 224 So. 3d 868, 869 (Fla. 2d DCA 2017). In determining the Former Wife's income, the trial court examined the significant bonuses she had received, and because the bonuses were regular and continuous, they were properly included in the Former Wife's income.

7

## II. DISTRIBUTION OF MARITAL ASSETS

The Former Wife argues that the trial court abused its discretion when evaluating the parties' marital assets. She notes that the Amended Final Judgment of Dissolution of Marriage Resolving Issues on Remand used different valuation dates than the original final judgment. She points out that the amended final judgment changed the valuation dates of the marital assets and debts from March 2016, the date the parties separated, to April 2018, the date the petition for dissolution of marriage was filed. She contends that the trial court may have misinterpreted this court's opinion, believing it did not have the discretion to keep the March 2016 valuation dates. The Former Wife argues that the trial court was only ordered to identify the marital assets and debts at the time the dissolution action was filed, and it had the discretion to establish an equitable valuation date. *See Donahue v. Donahue*, 398 So. 3d 1052, 1054 (Fla. 2d DCA 2024) ("The standard of review for a trial court's selection of a valuation date for a marital asset is abuse of discretion." (quoting *Leonardis v. Leonardis*, 30 So. 3d 568, 571 (Fla. 4th DCA 2010))).

The Former Wife is correct. In reversing the final judgment, this court held:

> Section 61.075(7), Florida Statutes (2017), requires that the date for determining which assets and liabilities can be classified as marital assets or liabilities is the earliest of the date the parties entered into a valid separation agreement or the date the petition for dissolution of marriage was filed. Because there was no separation agreement in this case, the parties' assets and liabilities had to be identified as of the date the former wife filed her petition.
>
> . . . On remand, once the trial court has identified *all* the marital assets and liabilities in existence when the petition for dissolution was filed, it may then proceed to value them as of the date or dates the court deems equitable.

8

327 So. 3d at 899-900 (citation omitted).

In the original final judgment, the trial court valued the parties' marital assets that were subject to equitable distribution at $82,984. This amount included $796 for the sale of the parties' Arizona property and the Former Wife's Fidelity retirement account, which was valued at $82,188 on March 1, 2016.

The amended final judgment valued the parties' marital assets that were subject to equitable distribution at $309,006. The assets were valued as of April 23, 2018, the date the petition for dissolution of marriage was filed. This new figure included assets that were omitted from the original final judgment. It added the parties' vehicles, their son's car, and the Former Wife's Fidelity HSA April 2018 Statement. It also added the Former Wife's Redstone savings and checking accounts and the Former Husband's Bank of America checking account. In addition, the amended final judgment increased the value of the Former Wife's Fidelity retirement account to $191,712, which was the account's value on March 31, 2018. The trial court did not explain why it changed the valuation date for the retirement account or added the previously omitted assets.

Although a trial court has discretion in determining the valuation date of the parties' assets, the valuation date used in the amended final judgment contradicts the findings made by the trial court in the original final judgment. As to the Former Wife's retirement account, the trial court found as follows in the original judgment:

> Wife's BASF Retirement Savings Plan - This is a marital asset for purposes of equitable distribution. There is a loan against this asset, which is also marital. This asset, and the loan against the account, will be valued as of March 2016. After the parties separated, the Husband contributed nothing toward the Wife's expenses. He deposited the entirety of his

9

annual salary, which at that time was in excess of $70,000, into his individual Bank of America account. Although the Wife's retirement account has since increased in value, it is due solely to the efforts of the Wife and passive market appreciation. It would be different if the parties continued to share in expenses, thus allowing the Wife additional income to contribute toward retirement, but that is not the case here. For these reasons, the Court is using the date of separation for purposes of valuing this asset and the liability associated with it.

In the original final judgment, the trial court made the following findings about the parties' bank accounts:

Parties' Checking and Savings Accounts - The parties opened separate accounts after their separation in March 2016, with the Wife utilizing her Redstone checking and savings accounts and the Husband utilizing his Bank of America account. They continued to maintain these accounts through the date of filing of the Petition and the trial in this cause. As is often the case with checking accounts, the values varied from day to day for each party as income was deposited and expenses were paid. This is also true of the Wife's savings account, which was used more like a traditional checking account. It was unrebutted that the Wife historically relied upon receipt of her employment bonus to pay off credit card debt accrued in the preceding months. The employment bonus was deposited into the Savings Account but, unlike a typical savings account which would remain static and/or increase in value, the Wife's savings was used as a vehicle to pay off accrued expenses that were "fronted" by the use of credit cards. After paying of the debts the account balance was nearly exhausted.

It would be contrary to the law to ignore the fact that any funds sitting in the Wife's account were expended shortly thereafter to pay off the accrued credit card debt. Because of the fluid nature of the bank accounts and because there was no argument made nor evidence provided suggesting the Wife intentionally depleted her account, no value is being assigned to either party's checking or savings accounts.

10

It was proper for the trial court, in the original judgment, to use the date of the parties' separation to value the retirement and bank accounts. *See Roth v. Roth*, 312 So. 3d 1021, 1027-28 (Fla. 2d DCA 2021) (holding that the trial court did not abuse its discretion by selecting the date of separation as the valuation date of the marital home where the court found "that the parties had been separated for three years and that since the separation, the Former Husband had continued to live in the marital home and make improvements to it without assistance from the Former Wife"). However, because no new evidence was considered by the court before entering the amended final judgment and the court did not explain why it changed its previous findings, we direct the trial court to either use the date of separation in valuing the retirement and bank accounts or make findings as to why that date is no longer appropriate.

## III.  CONCLUSION

We reverse the alimony and equitable distribution awards, and because those awards must be revisited, we also remand the award of retroactive child support for reconsideration, taking into account any changes in the alimony or equitable distribution awards.

Reversed and remanded.

NORTHCUTT and VILLANTI, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

11